## RIVERS V. FOOTE AND ANOTHER.

All locations, surveys and grants made after the closing of the land offices on the 13th of November, 1835, and before the re-opening of the land office under the Republic, are null and void ; and the denouncement and condemnation of lands by Commissioners or Ayuntamientos, after the 13th of November, 1835, were also null and void.

Where the defendant pleads special matter in defence, the plaintiff will not be permitted to introduce evidence which confesses and avoids such defence, unless he has alleged the same in his pleadings.

In the action of trespass to try title, where the defendant relies on the plea of not guilty, and introduces evidence by way of confession and avoidance, the plaintiff must also, from the necessity of the case, be permitted to introduce evidence in confession and avoidance of such defence, without having alleged the same in his pleadings ; but if the defendant plead specially in this action, the general rule applies.

Where the defendant in the action of trespass to try title pleads " not guilty " and also pleads in confession and avoidance, " it may well be questioned whether he should not be confined in his evidence, to the matters pleaded."

Where the plaintiff in an action of trespass to try title, claimed by a recent location, and the defendants pleaded title deraigned from one Cartwright to whom the land was granted in 1824, who had sold to Stafford in 1825, it was held that the plaintiff could not be permitted to prove that Stafford abandoned the country, because he had not alleged that fact in his pleadings. (See the facts, for the vagueness with which the defendants had pleaded their title.)

The difference between the cases where land remained entirely vacant because of abandonment of the country, and cases of forfeiture.

Error from Colorado. Action of trespass to try title by the plaintiff in error, R. J. Rivers, against the defendants in error, R. H. Foote and J. M. Hunter. The defendants pleaded a general denial; not guilty; and specially, that the defendant R. H. Foote and one Frederick Foote " are the legal, joint own-
" ers of the said premises, by title duly recorded in the Record-
" er's office of Colorado county ; that said Frederick Foote and
" himself (R. H. Foote) have had the possession of said pre-
" mises since the 10th of August, 1824, under title and color
" of title duly recorded, and have during the whole of said time
" held and occupied said premises adversely to the plaintiff

" and all other persons, undisturbed by suit." " And they " further say that the land, sued for by plaintiff, is a part of " the headright league of land granted to Thomas Cartwright " in 1824, as will appear by a certified copy of the patent filed " in this cause 20th October, 1849 ; that the said land was, " after the year 1825 and before 1836, improved by having " a house built on it, and a field enclosed, well dug, and other " improvements made thereupon, by those under whom the " defendants claim, and that said land was also resided upon." There was no allegation in the petition or amendments thereto, which impeached the title set up by the defendants, on account of forfeiture, or otherwise. The plaintiff claimed the land by virtue of the location of valid land certificates, made in 1848.

The plaintiff proved his certificates and locations on the land in controversy. The defendants read the following agreement :

" In this case it is agreed and admitted that the land, in " controversy in this suit, is part of the league of land grant- " ed by the proper authorities, in 1824, to Thomas Cartwright, " as appears by copy of patent filed in this cause October 26th, " 1849, as his headright, and that the same was granted in " conformity with law ; that after 1825 and before 1836, the " land in controversy in this suit, was improved by those, " under whom the defendants claim, a house had been built " and a well dug thereon, a field cleared and a crop raised ; " and the land was resided on for many years by those under " whom defendants claim ; that the land in controversy was " deeded to William Stafford by Thomas Cartwright in Feb- " ruary, 1825, and conveyed by him, Stafford, to his children " in 1837, and by them, his children, to R. H. Foote, one of " the defendants, in 1846."

Thereupon the plaintiff offered in evidence a denunciation of the same land by Thomas Cochrane, " one of the colonists in- " troduced by the empresarios Austin and Williams " to the Commissioner Peebles, on the ground that Stafford to whom

Cartwright had sold, had abandoned the country; the condemnation of the land, and the re-grant of it to Cochrane. These proceedings took place between the 10th and 26th of February, 1836. It was stated in the bill of exceptions, that they were offered " for the purpose of proving that the land " in controversy had been denounced by the said Commis- " sioner and by Cochrane. They were excluded, and the " plaintiff excepted.

" Plaintiff then offered to prove by depositions and by wit- " nesses on the stand, that William Stafford, under whom the " defendants claim, and to whom the land in controversy was " deeded by Thomas Cartwright, the original grantee, aban- " doned the country in the year 1835 ; that the said Stafford " went to the State of Mississippi, where he resided for some " time ; that he afterwards removed to the State of Louisiana, " where he remained until his death; and that he never returned " to this country; that he, said Stafford, after he left this country, " and before he removed to Louisiana, purchased and im- " proved property at Grand Gulf, in the State of Mississippi, " and resided upon and occupied the same with his family." To all of which the defendants objected, and the Court sustained the objections ; and thereupon the plaintiff excepted, &c. There was judgment for the defendants.

*R. Hughes*, for plaintiff in error. I. For the plaintiff in error, it is not pretended that there was any ground, upon which he would be entitled to a verdict, but upon that disclosed in the evidence rejected.

It will scarcely be questioned, that the leaving the country and the acquiring a domicil in a foreign country, beyond the limits of the Republic of Mexico, did *ipso facto*, produce a reversion of the land of all colonists and settlers to the State, and thereby that the land became vacant. (Heirs of Holliman v. Puebles, 1 Tex. R. 669.) And we think there is as little question that Stafford, under whom defendants claim, came fully within the rule laid down in Holliman v. Peebles.

The Court erred, beyond all question, as to the grant offered in evidence.

It is admitted that the grant to Cochrane is void, as well as the survey, if any was made, and the location; for the reason only that the Constitution of the Republic so subsequently declared. (Gen. Provisions, Art. 10.) But it does not follow that the denunciation, the inquiry, and adjudication are void. These are not so declared, nor are they even prohibited by the decree of the Consultation. By the Article of the "Plan and Powers of the Provisional Government," on that subject, " all land commissioners, empresarios, surveyors, or persons " in any wise concerned in the location of land," were ordered to cease their operations, " and to desist from further loca- " tions until the land offices can be properly systematized." (Art. 14, Hart. Dig. p. 20.)

The officers were only arrested in their operations as to locations. The commissioners were not deprived of their offices, but were only to cease operations as to such locations for the present. There was no prohibition to denunciation, and an inquiry as to what lands were vacant under the 30th Article of the law referred to. Now, may not a thing be void for one purpose, or in one part, and good for another, or in another part? Where a tenant at will grants over the estate, though the grant be void, for want of authority to grant, yet it may be used as evidence to prove the determination of his will, and thereby an end of his estate. (8 Bac. Abr. Void and Voidable, B. 2, 168.) And so here, nothing passes by the grant, because declared void, but that which preceded the grant, not being either in violation of law, or declared void, may stand and be evidence of the facts contained in it. There may be no title passed, as in the case of the tenant at will granting over his estate, but that which necessarily arises out of, and is proved by, the void act, existing as a fact notwithstanding the nullity of the act containing it, may be proved and be used as evidence against him who is affected by it.

II.   But suppose for the present, it be admitted for the ar-

83

gument only, that the grant was properly rejected, then as to the other evidence rejected.

The statement of facts shows an effort to avoid the force of the decision in Holliman v. Peebles, by proving that the land in dispute comes within the rule laid down by the Court in the case of Paul v. Perez, (7 Tex. R. 338,) which was, that all forfeited improved lands, having been pledged to redeem the promissory notes of the Government, were not vacant and subject to location by individuals.

We reply: This abandonment, under the 30th Article of the Colonization Law of 1825, can in no sense be said to be a forfeiture. This Court having determined that by the domiciliaton in a foreign country, the land *ipso facto* becomes or remains vacant, a distinction is at once established between a forfeiture and that which occurs under such circumstances. Chief J. Hemphill distinctly states the difference between the cases of the return of the land to the public domain, under the 30th Article, and the forfeiture under the 24th Article of the Law of 1825. (Holliman v. Peebles, 1 Tex. R. 675-6.) The same opinion shows that in cases of forfeitures for the failure to cultivate, some inquiry was necessary in order to ascertain the forfeiture.

*Harris & Pease*, for defendants in error. I. Whatever powers may have been vested in the Colonial Commissioners, under the laws of Mexico, or of Coahuila and Texas, to declare lands vacant or forfeited, where the grantees had abandoned the country, all such powers, and indeed all the powers vested in said Commissioners, ceased on the 13th day of November, 1835, when the land offices were closed by "The Consultation."

The Constitution of the Republic of Texas recognized the validity of the Ordinance of the Consultation in the 10th Section of the General Provisions.

Robert Peebles had no authority whatever as a Commissioner, at the time Cochrane applied to him for this land, nor

at the time said Peebles declared this land forfeited and vacant, and pretended to grant it to said Cochrane; and the declaration of said Peebles, contained in said concession, that this land was forfeited and vacant, can have no other effect as evidence of said forfeiture, than the declaration of any other individual made out of Court.

II. It is contended by the defendants in error: 1st. That there were no allegations in the pleadings of the plaintiff, under which the evidence recited in the second bill of exceptions, could have been admitted. The plaintiff no where avers in his pleadings that William Stafford had left or abandoned the country, in 1835, and never returned to it; nor that he had forfeited his right to this land; nor that this land was vacant and subject to be appropriated by him. He had no right, therefore, to introduce evidence going to prove any of these facts.

This evidence could have had no other object but to show that this land was vacant, because Stafford had forfeited it by abandoning the country. On this point see Mims v. Mitchell, 1 Tex. R. 443; see also 2 Tex. R. 541; 3 Tex. R. 317, 168; 2 Tex. R. 206; and Paul v. Perez, 7 Tex. R. 338.

2nd. Even if the plaintiff had alleged that the land was vacant, or had been forfeited, it would not have been competent for him to have introduced this evidence. It will be seen, by reference to the amendments to plaintiff's petition, that he averred that his cause of action arose from an entry and location upon this land, under a headright certificate, and the statement of facts shows that previous to offering this evidence, the plaintiff had proved by Joseph Tinken, Surveyor of Colorado county, that he entered and located this land on the 1st of October, 1848, thus fixing the 1st of October, 1848, as the time when his right of action accrued, (if any right of action could accrue from such entry and location without a survey,) at which time it was not competent for him or any other individual to prosecute any proceeding in Court, to show that this land had been forfeited, even if such were the fact.

The 4th Section of the 13th Article of the Constitution of the State of Texas, (Hart. Dig. p. 80,) declares, that all fines, penalties, forfeitures and escheats, which have accrued to the Republic of Texas, under the Constitution and laws, shall accrue to the State of Texas ; and the Legislature shall by law provide a method of determining what lands may have been forfeited or escheated. (Hancock v. McKinney, 7 Tex. R. 384.)

It may be urged that this land was forfeited by abandonment of the country, before the Republic was established, but if so, it would still be included in the above Section of the Constitution of the State ; for the second Section of the schedule of the Constitution of the Republic, (Hart. Dig. p. 35,) had previously declared that all fines, penalties, forfeitures and escheats, which have accrued to Coahuila and Texas, or Texas, shall accrue to the Republic. This Section of the State Constitution included forfeitures to Coahuila and Texas, or Texas, for they " had accrued to the Republic of Texas under the " Constitution and laws."

WHEELER, J. The errors assigned, which it is material to notice, relate to the ruling of the Court in excluding evidence offered by the plaintiff. This was, 1st. The petition of Cochrane, addressed to the Commissioner, Peebles, on the 10th of February, 1836, denouncing the land in question as vacant, by reason of the abandonment of the country by the former owner, Stafford, under whom the defendants claim ; and the action of the Commissioner, adjudging the land vacant, and, afterwards, on the 21st of the same month, regranting it to the petitioner, Cochrane.

2nd. The depositions of witnesses, offered to prove the fact of the abandonment of the country by Stafford.

It is admitted by counsel for the appellant, that the title issued by Peebles, the Commissioner, to Cochrane, is void, under the provision of Section 10, of the general provisions of the Constitution of the Republic, because made after the closing

of the land offices by the Act of the Consultation, in 1835.
But it is insisted that, though void for some purposes, it may
be valid for others : and that it is so as an adjudication that
the land was vacant.

The language of the constitutional provision operating upon
this title, is, " That all the surveys and locations of land made
" since the Act of the late Consultation, closing the land offices,
" and all titles to land made since that time, are, and shall be
" null and void."   (Hart. Dig. p. 89.)

Here is an express recognition of the validity of the Act of
the Consultation " closing the land offices :" and the Act thus
referred to and recognized, provides that " all land Commis-
" sioners, Empresarios, Surveyors, and persons in anywise
" concerned in the location of land, be ordered forthwith to
" cease their operations," &c.   The Act, taken in connexion
with the Constitution, leaves no room to question, that the
powers of the Commissioner, respecting the grant of lands,
were suspended.   And it cannot require argument to prove,
that, as the Commissioner could not act officially touching the
granting of lands, his acts, in his private capacity, can occupy
no higher or other ground than the mere declarations of third
persons, which are denominated by the law hearsay, and, of
course are not admissible in evidence.

The denunciation of land, by a party asking a grant of it to
himself, under the former laws, did not differ essentially from
the location of land as practiced under our present land laws.
It was, in effect, but a location of the particular land desig-
nated.   It was the incipient step in obtaining the grant.   Both
the denunciation and inquiry respecting the alleged abandon-
ment, looked to the regrant of the land as their ultimate ob-
ject, and were preliminary thereto.   And, I apprehend, the
denunciation by the Constitution of the nullity of all " loca-
tions of land," and titles thereto, made or issued after the
closing of the land offices, by the Act of the Consultation, is suf-
ficiently comprehensive to include all the proceedings prelim-
inary to the making of the title.

But if it be conceded that this was competent evidence of the denunciation of the land in 1836, and an adjudication by competent authority, that it was then vacant; yet it was not, we think, admissible under the state of the pleadings. The plaintiff had not laid the foundation for its admission by averment, though apprised by the answer that the defendants would rely on the title which it was proposed by this evidence to impeach: and for that reason it was inadmissible. This point was fully determined by this Court in the case of Paul v. Perez. (7 Tex. R. 338.) In that case the Court said: " The answer of the defendant denies the right of the plain-" tiff; and then sets up his own superior title." " If the " plaintiff relied on the supposed forfeiture, and believed that " he had a right to avail himself of it, in this action, he should " have set up the fact, or facts, constituting the forfeiture, in " his answer to this cross bill or petition of the defendant; or " he could, on motion to the Court, have amended his petition " by inserting the allegation of the forfeiture. The principle, " that the allegation must be broad enough to admit all the " necessary proof, and that every material fact must be alleged, " has been often decided by this Court; first solemnly ad-" judged in Mims v. Mitchell (1 Tex. R. 443) and sustained " by an unbroken train of decisions, from that time, down to " the present." (See Coles v. Kelsy, 2 Tex. R. 541; Caldwell v. Haley, 3 Id. 317.)

The only exception to this rule, is that made by the statute, in favor of a defendant who relies on the plea of " not guilty," to an action of trespass to try title. By the statute (Dig. Art. 3235) it is provided that the defendant in this action, shall not " hereafter " " be required to put in any other plea than the one of ' not guilty.' " Where, therefore, the defendant does not plead specially, but relies on his right under the statute, he must, of necessity, be permitted to give in evidence special matter in his defence under this plea. For it evidently was the intention of the statute to give that right. But if he does not choose to rely on his statutory privilege, but also pleads

specially, it may well be a question whether he should not be confin'ed in his evidence to the matters pleaded. There would seem to be much reason for considering this the correct rule of practice. For by pleading specially, the defendant gives notice of his defences, and the plaintiff has a right to suppose he will rely on none other; and ought not to be required to come prepared with evidence to meet other defences, than those which the defendant, by his pleadings, has asserted as the matters of defence on which he will rely.

The effect given by the statute to the plea of "not guilty," is an anomaly in our system. And it would seem a necessary consequence of the right to give in evidence special matters under that plea, that if the defendant relies on it, and does not plead specially, so as to apprise the plaintiff of his grounds of defence and the title on which he intends to rely, the latter must be permitted to meet and repel his evidence of title, when introduced, by any evidence which he may have it in his power to produce. For the plaintiff cannot be required to plead matters in avoidance of a title, which the defendant has not, by his pleading, given notice of his intention to rely on in his defence. If, therefore, the defendant had not pleaded his title, but had introduced it at the trial under his plea of not guilty, without having given the plaintiff notice of the particular title on which he intended to rely, any competent evidence would have been admissible on the part of the plaintiff, to impeach its validity, or avoid its legal effect, without the necessity of pleading the special matter relied on in avoidance of the title. But the defendant, as in the case just cited, had specially pleaded his title, and set it out as a part of his answer; and, in respect to the admissibility of the evidence offered to impeach it, the present cannot be distinguished from the case of Paul v. Perez. In both cases it was proposed to prove that the title pleaded by the defendant had been forfeited. The character and effect of the supposed forfeiture was different; but the principle, as to the necessity of appropriate averments to admit the evidence by which it was proposed to prove it,

was the same. There was no question that the title had vested
in the party under whom the defendants claimed in this case :
and that it remained in him until his supposed abandonment
of the country, whereby it was forfeited and reverted to the
government. And the difference in the character of the for-
feitures sought to be established was, that in the case of aban-
donment of the country under the 30th Article of the Coloni-
zation Law of the 24th of March, 1825, the act of abandon-
ment operated a present forfeiture and divestiture of titile,
*per se.* The land instantly reverted to the government, and
became a part of the public domain, " entirely vacant," in
the language of the law and of this Court in the case of Hol-
liman v. Peebles, and, consequently subject to location and
regrant. (Holliman v. Peebles, 1 Tex. R. 672.) Whereas
in other cases of forfeiture, the land remained separated from
the public domain until the forfeiture was declared; and, con-
sequently, was not subject to location and regrant, as in the
former case. But this difference in the character and effect of
the forfeiture in the present case, as we have said, can make
no difference as to the necessity of pleading the facts, in which
it consisted ; or in respect to the admissibility of evidence to
establish the forfeiture, when it was proposed to invalidate a
title specially pleaded and relied on by the defendant. And
the case we have referred to, is decisive of the present ques-
tion, and we think rightly so on principle, against the admis-
sibility of the evidence proposed by the plaintiff: as well as the
depositions offered to prove the same fact, as the other evi-
dence we have considered. The Court, therefore, did not err
in excluding the evidence offered by the plaintiff; and the
judgment is affirmed.

Judgment affirmed.