G. A. MEYER, ADMINISTRATOR, ET AL. v. GUSTAVE OPPERMAN.

No. 2537.

1. **Pleading—Trespass to Try Title.**—Defendant in trespass to try title attacked the title of the plaintiff on ground that a trust sale of the land to him had been unfairly made, and at an inadequate price. *Held*, that without replication the plaintiff could show that the land was encumbered by prior liens, and the extent of such encumbrances.

2.　**Same.**—Under article 1197, Revised Statutes, "It shall not be necessary for the plaintiff to deny any special matter pleaded by the defendant, but the same shall be regarded as denied unless expressly admitted," and rebutting testimony is admissible without replication.

3.　**Parties.**—Defendant in an action of trespass to try title died after answering; his administrator and heirs were made parties. By amended petition it was alleged that plaintiff had purchased the interest of a number of the heirs. In such state of pleading the parties so selling out were not necessary or proper parties in the subsequent litigation.

4.　**Charges Given and Refused.**—Upon testimony on issues affecting the validity of a trust sale attacked for irregularity of the trustee in making the sale, and for inadequacy of price, see instructions approved and instructions properly refused.

5.　**Charges.**—See charges *held* to be appropriate to the testimony upon the issues made in the pleadings and evidence.

Appeal from Galveston.　　Tried below before Hon. F. Charles Hume, Special District Judge.

The opinion states the case.

*C. L. Cleveland,* for appellants. — 1.　The court erred in overruling defendants' objections to the testimony admitted by the court, with respect to liens claimed by the plaintiff as subsisting upon and against the property in his favor prior to and on the 11th day of September, 1876, and asserted when the property in question was sold by Robert Ruff, trustee, and at which sale Opperman was the purchaser.　Rivers v. Foote, 11 Texas, 663; Hollingsworth v. Holshousen, 17 Texas, 46; Paul v. Perez, 7 Texas, 345.

2.　The plaintiff having brought suit originally against John Berlocker, his heirs, upon his death, became necessary parties defendant; and having been so made, and having answered and not disclaimed, the plaintiff could not thereafter be permitted to prosecute the suit without them, or to discontinue as to a part of them.　Rev. Stats., art. 1202.

3.　The charges asked for and refused by the court embraced the law applicable to the case, and the court failed to give in the general charge the equivalent of the principles contained in the rejected charges.　2 Perry on Trusts, 3 ed., secs. 602o, 602x; Hurt v. Cooper, 63 Texas, 362; Briscoe v. Bronough, 1 Texas, 326; Chamblee v. Tarbox, 27 Texas, 139; Burch v. Smith, 15 Texas, 219; Earl v. Thomas, 14 Texas, 583; Gilkey v. Peeler, 22 Texas, 669; Drinkard v. Ingram, 21 Texas, 650; Stegall v. McKellar, 20 Texas, 268; Howerton v. Holt, 23 Texas, 60; Frisby v. Withers, 61 Texas, 134.

*Wheeler & Rhodes,* for appellee, cited Hurt v. Cooper, 63 Texas, 367; Railway v. Stewart, 57 Texas, 166; Galveston v. Morton, 58 Texas, 416.

HOBBY, Judge.—This suit is an ordinary action of trespass to try title, brought on February 28, 1877, by Gustave Opperman, originally against

John Berlocker. By amendment filed in February, 1885, the death of said Berlocker was alleged, and his administrator, G. A. Meyer, was made a party.

It was also alleged that Louisa Jones, John, and Charles Berlocker were the heirs at law of the deceased John Berlocker and his first wife Anna, also deceased, and that the second wife of said John Berlocker, Louisa J., and her minor children Bertha, Sextus, and Leo Robert, survived said John Berlocker, and were made parties. The adult heirs pleaded not guilty and limitation.

On November 5, 1885, an amended petition was filed alleging the purchase, since the institution of suit, by petitioner of the interest of Louisa, John, and Charles Berlocker, the issue of the first marriage between John Berlocker and his wife Anna.

The second wife, Louisa J., and her minor children were alleged to be in possession of the property sued for.

The suit was prosecuted against G. A. Myer, the administrator of John Berlocker's estate, and the second wife, Louisa J., who survived Berlocker, and who were alleged to be in possession.

On December 10, 1886, Louisa Berlocker and the said minors by their guardian filed their answer containing general demurrer, and pleaded specially that the plaintiff deraigns his title to the property in question through a deed made by Robert Ruff, as trustee, of date September 11, 1876, under power contained in trust deed made by John Berlocker and his second wife, dated January 1, 1874, and a fraudulent sale thereunder and pretended purchase by appellee, who was the beneficiary in said trust deed; that said sale was in violation of the terms and conditions of said trust deed, and for a grossly inadequate price; that by the terms and conditions of the trust deed it was made the duty of the trustee, before any sale should be made, to first advertise in some newspaper printed in Galveston for twenty days; that the trustee abused the discretion invested in him in this respect, and unfairly and in violation of the spirit and intent of the said provision selected a printed sheet called *The Civilian,* in which he pretended to give the notice required; that the sheet called *The Civilian* was an obscure paper, not generally read or generally circulated, printing only a few hundred sheets, not read or sought by the general public, and the advertisement therein did not give reasonable, fair, and proper notice of the sale; that there were other newspapers printed in the city which would have given by advertisement therein such fair notice and notoriety, notably the Galveston *News;* that the sale thereunder was for a price grossly inadequate and shocking to the beneficiary, of $500 for lot 5 and improvements, and $500 for lot 2, embraced in same sale; that Opperman paid no part of the purchase money, but endorsed a credit of the amount bid on the note which said trust deed was given to secure; that there was on said lot 5 a large three-story brick building then worth

$12,000, and the ground worth $5000. There was prayer to set aside the sale and annul the deed. Plaintiff made no reply to the answer of the defendants.

The cause was tried by a jury, resulting in a verdict for the plaintiff. Judgment was rendered against Meyer, the administrator of Berlocker, and Louisa Berlocker and the minor defendants.

The error first assigned in the brief of appellants is the court's action in overruling the objections of the defendants to the proof offered by plaintiff, and admitted by the court, with respect to liens claimed by the plaintiff as subsisting upon the property in his favor prior to the 11th day of September, 1876, and asserted when the lot was sold by Robert Ruff, trustee, and at which sale Opperman was the purchaser.

On the trial the witness Opperman was asked, in connection with the purchase of this property by him, what was the condition of this property with respect to other liens. He answered that there were liens upon it amounting to $80,000. This was objected to by the defendant, because there was no allegation in the pleadings of such liens, and the plaintiff having made no replication by way of plea or supplemental petition to the defendants' answer, such evidence was inadmissible.

The authorities cited by the appellant in support of this assignment are the early cases of Paul v. Perez, 7 Texas, 345, and Rivers v. Foote, 11 Texas, 671, where the well known rule was laid down that "if the defendant in this action pleaded not guilty, and a special plea *setting up title in himself*, and introduced evidence of such title, and the plaintiff wished to introduce rebutting evidence, he must make his allegations, as in other cases, to correspond with such testimony."

In the cases cited the defendant pleaded specially, setting up title in himself; and it was held in the first case that the plaintiff could not prove a forfeiture of the title so pleaded without proper allegations as a predicate for the proof. So in the second case, where the defendant set up title in himself, it was held that the plaintiff could not show an abandonment of the country by Stafford, under whom the defendant claimed, for the purpose of defeating his title, without having alleged it.

It seems to us that the want of analogy between the cases cited and the present is manifest. There is no special plea by the defendants setting up title in them of any kind, consequently the evidence complained of is not in rebuttal of, nor does it attack any title of defendants. It is clearly relevant to the main issue made by the pleadings.

The fairness of the sale and the sufficiency of the price paid by the appellee for the land was the decisive issue in the case made by the defendants' plea, and no further plea was necessary on the part of plaintiff for that purpose. Article 1197 of the Revised Statutes provides that "it shall not be necessary for the plaintiff to deny any special matter of defense pleaded by the defendant, but the same shall be regarded as denied

unless expressly admitted." Under the operation of this statute the special matter alleged by the defendants, that the property was purchased by plaintiff at a grossly inadequate price, was as effectually denied by the plaintiff, in the absence of an express admission of its truth, as if he had filed a special denial thereof. Evidence in support of defendants' plea, and in rebuttal of the same was necessarily admissible. It will be noticed that the evidence referred to was in reponse to that brought out on cross-examination by the defendant. The witness Opperman had testified on *cross-examination* that "he paid $500 for the whole thing." On *re-examination* by the plaintiff he was, in explanation of the price thus paid, asked as to the liens on the property. Under the familiar rules of evidence, we think it was competent for the witness to show the condition of the property and the encumbrances then upon it, so that the jury could determine from all the facts whether the price paid, $500, was or not, under the circumstances, a grossly inadequate sum, as claimed by the defendants.

It is next assigned as error that the defendants' demurrer was overruled by the court because the plaintiff having brought suit originally against John Berlocker, his heirs were necessary parties upon his death, and having been so made, and having answered, the plaintiff could not thereafter be permitted to prosecute the suit without them, or to discontinue as to a part of them.

The trial was had upon the second amended petition, which was in lieu of all prior pleas filed by plaintiff. The heirs of the first marriage had been by a prior petition, filed in February, 1885, made parties defendant. They were Louisa Jones, John, and Charles Berlocker. The amended petition on which the trial was had November, 1885, alleged that plaintiff had purchased their interest. This was not controverted, and there was nothing to litigate as to these heirs; they were no longer parties to the suit, and its prosecution without them could not have affected the interest of the appellants.

The remaining assignments relate to the charge of the court.

The defense relied upon in this case was that the title of the plaintiff was deraigned through a deed by Robert Ruff, trustee, on September 11, 1876, under a power contained in a trust deed executed by John Berlocker and his second wife, on January 1, 1874, to secure a note for about $6201.72 due plaintiff from said Berlocker, and a sale thereunder, at which appellee became the purchaser. That by a violation of the terms of the trust deed with respect to the notice to be given of the sale, the plaintiff obtained the property, worth about $17,000, at a grossly inadequate sum, to-wit, $500.

There was evidence that the Galveston *News* and *Post* were newspapers having at that time a much larger circulation than *The Civilian,* the paper in which the notice of the sale was published; that it was an obscure

newspaper, and had a limited circulation, and was not read by the public much. There was also evidence that it was the official organ for the city of Galveston; had a circulation of several hundred; that citations and legal notices were generally published in it. Appellee became the purchaser of lot 5, in block 563, and improvements, for $500, which amount he bid, and which was credited on the note, less $53.75, expenses of the sale. Berlocker was present at the sale.

There was testimony showing that the property in 1876 may have been worth about $15,000 or $17,000. The plaintiff's agent and attorney Burroughs at the sale gave notice of the liens on the property claimed by appellee, and that the property would be sold subject thereto. There was a trust deed in favor of Mrs. Stephens, of June 14, 1870, to secure $6000, and five other trust deeds in favor of plaintiff Opperman, of different dates, aggregating over $20,000. Other property was included in these trust deeds. Appellee became the assignee of the Stephens note. It is manifest from the evidence that Berlocker owed Opperman on this property in excess of its value on the day of the sale under the trust deed under which appellee claims, and which sale appellants alleged to be fraudulent.

Under these facts, the charge was substantially that the appellee was entitled to recover unless, in the circumstances of the advertisement for the sale, or the sale itself, a fraud was committed to appellant's prejudice. The duty of the trustee to select a newspaper for the insertion of notice was defined, as also the term newspaper, and whether *The Civilian* was at the time of the publication of the notice a newspaper was a question of fact submitted to the jury. The jury were then told that they would be authorized to find the sale invalid, and for defendants, if *The Civilian* was not a newspaper giving by the publication full notoriety to the sale, and this resulted in sacrificing the property. But its limited circulation, and that its issue was not so great as other Galveston newspapers, nor the fact that citizens did not take and read it, they were told, would not invalidate the sale. The jury were also told that it should clearly appear that the trustee Ruff abused his discretion in giving notice of the sale; that inadequacy of price was a circumstance proper to be considered with other circumstances in determining whether the sale was fair or not, but alone would not vitiate it. They were instructed that the holder of liens for whose account a sale was being made of the encumbered property under a junior lien had the right to give notice at the sale of such liens, and advise the public of the estate in the property which would be bought, and for his own protection, but not to discourage bidders, stifle competition, and purchase for himself at a sacrifice to the owners.

The appellants requested the court to charge the jury " that sales under powers in deed of trust are a harsh mode of foreclosing the rights of the

mortgagor. They are scrutinized by courts with great care, and will not be sustained unless conducted with all fairness, regularity, and scrupulous integrity. Upon very slight proof of fraud or unfair conduct, or of any departure from the terms of the power or abuse of the trust in making a sale, it should be set aside. If proper advertisement of the sale be not given, or if the proceedings, manner, and mode of conducting the sale by the trustee, or on the part of the beneficiary, he being the purchaser, are in any way contrary to justice and equity, the sale will not be allowed to stand. The directions of the power must be complied with in selling the property. The provisions in the power limiting and regulating the sale are for the benefit of the debtor. If the trustee or creditor acts in bad faith, or exceeds his power, or if the trustee abuses the discretion vested in him in the selection of the medium through which publication and notoriety should be given to the proposed sale, as if the advertisement of the sale were inserted in an obscure newspaper, which would not give fair, full, and reasonable notice to the public thereof, by means whereof the property was sold for a grossly inadequate price, equity would set aside the sale; and in such event, if the evidence should satisfy you of the unfairness of the sale or abuse of the power conferred in the trust deed, you should find for the defendants." And also, "that if the jury believe from the evidence that the conduct of the trustee Robert Ruff, or Gustave Opperman, the beneficiary, or their agents or attorney, at the time of the making of the sale, on September 11, 1876, was unfair, and calculated to prevent competition, or to deter bidding at said sale, whereby the property was sold for a grossly inadequate price, then and in that case Opperman, being the purchaser, would take no title, and you will find for the defendants."

These charges were refused, and the refusal to give them is assigned as error.

The charge, we think, is a correct and fair presentation of the material issues made by the evidence in the case, and there was no occasion for the special instructions requested by the appellants.

The charge in the present case, with respect to the duty of the trustee to give notice of the sale of the property, and its submission to the jury of the question whether the Galveston *Civilian* was a newspaper as defined, appears to be in harmony with the views expressed by the Supreme Court in the case of Hurt v. Cooper, 63 Texas, 367, a case in which it seems the sufficiency of a notice of a similar sale in the same newspaper was attacked and upheld.

That portion of the charge which was to'the effect that at the trust sale of September 11, 1876, only the individual half interest of John Berlocker was sold, the other half being the property of the children of the first marriage of said Berlocker and his wife Anna, was authorized by the evidence.

There was no controversy as to the fact that this was the property of

the first marriage of John Berlocker with his wife Anna. She died in June, 1870. The deed of trust was executed after her death, on the 1st. of January, 1874, by John Berlocker, and the children, Louisa, John, and Charles Berlocker, the issue of the first marriage, did not join in the trust deed. They with John Berlocker occupied the property before the second marriage of the said John Berlocker. It was their interest plaintiff purchased pending this suit.

Under these facts there was no error in charging the jury that only the interest owned by John Berlocker passed by the trust sale. It could not, we think, have affected the issue of the adequacy of the price paid at the trust sale by the appellee, because whether the entire property or only one-half was sold at that sale, the evidence shows that the property was encumbered by liens beyond its value.

The court, it is claimed, erred in refusing the following charge:

"1. That the judgment of the District Court of Galveston County, rendered on March 3, 1876, in cause No. 7686, entitled Gustave Opperman v. John Berlocker et al., was conclusive, and binding upon Gustave Opperman, the plaintiff therein, and all other parties in that suit, in respect to all matters therein litigated, or that were necessary and proper therein to be litigated, and which might have been litigated, and especially as to all liens theretofore subsisting, or claimed to be subsisting in, or belonging to, or claimed to belong to Gustave Opperman, or to any of the defendants, and that the said Gustave Opperman was thereby precluded and estopped from thereafter asserting, setting up, or claiming any lien, actual or pretended, theretofore existing in his favor, or in his right, either as original holder in and upon the property known as lots Nos. 5 and 2, and improvements thereon, in block No. 563, in the city of Galveston, and which are involved in this suit."

There was no error in refusing this instruction, because the judgment rendered in the cause No. 7686 referred to, by its own terms provided that "this judgment should in no wise impair or prejudice or delay the liens and junior mortgages executed after March 14, 1870, as to such part of the premises as may not be sold to satisfy this judgment." The lien in the present case was one of the excepted junior mortgages, having been executed in January, 1874, and the evidence was that plaintiff had directed that the "premises," lot No. 5, involved in this suit "be not sold to satisfy the judgment in cause No. 7686." This lien being specially excepted by the terms of the judgment from its operation, the appellee was not estopped by it.

We are of opinion that under the facts of this case no other result could have been fairly arrived at than was reached by the verdict and judgment, and that the judgment should be affirmed.

*Affirmed.*

Adopted January 28, 1890.