## W. H. HARRISON ET AL. V. R. B. HAWLEY ET AL.

### No. 642.

1. **Pleading—Supplemental Petition.**—Plaintiffs sold goods to a mercantile firm, which afterwards conveyed them to H. in trust for the benefit of certain creditors. Plaintiffs brought suit against H. for the value of the goods, alleging a conversion. H. answered, that the sale by plaintiffs had passed the title to the firm, and that the firm had by the trust deed duly conveyed the title to him, and that said firm and the beneficiaries in the trust deed were necessary parties to the suit. Plaintiffs by supplemental petition replied, that the firm had fraudulently procured the alleged sale by false representations as to their solvency, wherefore no title had passed. *Held,* that this was proper matter for a supplemental petition, and objection that it should have been presented in the original petition was not well taken.

2. **Parties—Beneficiaries in Trust Deed.**—Neither the firm of original purchasers, who were insolvent, nor the beneficiaries in the trust deed, were necessary parties to this suit.

3. **Evidence—Copy of Original.**—Where a witness testified, that a certain original report of a commercial agency as to the standing of a mercantile firm which he had taken, was lost, that he had looked for it and could not find it, and that the figures contained in the report, the correctness of which he recognized, were made by such firm, such copy was properly admitted in evidence.

4. **Evidence—Fraudulent Intent.**—Where the action involves the issue of fraud in the purchase of goods, evidence tending to show a fraudulent intent is not confined to the existence of that intent with reference to the parties complaining in the action, but the fraudulent design to purchase goods upon false statements as to solvency may be shown to have extended to others, prior to the sale in question.

5. **Same—After Statements of Grantor.**—Statements and declarations by an assignor or grantor in an instrument after he has parted with the title to the property, can not be heard to defeat the sale.

6. **Same.**—But in this case it was not error to admit as original evidence such statements by the purchasing firm showing fraudulent intent, made to witnesses after their failure, and after the execution of the trust deed, although the suit was dismissed as to them after the introduction of such evidence, they having testified in the case and denied making the statements, and no specific objection to the evidence on this ground having been made in the court below, or embodied in the assignments of error.

APPEAL from Tarrant. Tried below before Hon. N. A. STEDMAN.

*Hunter, Stewart & Dunklin,* for appellants.—1. All matters and things primarily essential to the plaintiffs' right of recovery must be averred and set forth in the original petition, and can not be set up for the first time in a supplemental petition, and if so pleaded could not constitute the basis of a recovery. Ins. Co. v. Camp, 64 Texas, 521.

2. Harrison and Kernaghan were in the possession of and holding the property in controversy as trustees only, and the beneficiaries of the trust property, as well as the grantors, Bateman & Bro., were necessary and proper parties to said suit, and should have been permitted by the court to enter their appearance to said cause and make defense thereto. Ebell v. Bursinger, 70 Texas, 120; Boles v. Linthicum, 48 Texas, 224; Huffman v. Cartwright, 44 Texas, 296; Hall v. Harris, 11 Texas, 300; Holland v. Baker, 3 How., 72; Woodward v. Wood, 19 Ala., 213; Van Doren v. Robinson, 1 C. E. Green, 256; Richards v. Richards, 75 Mass., 313; Ward v. Hollens, 14 Md., 158; 1 Dan. Chan. Prac., 5 ed., 220, note 1; Story Eq. Pl., sec. 207; 2 Perry on Trusts, sec. 873; Hudson v. Milling Co., 79 Texas, 401.

*A. M. Carter,* for appellees.—1. Plaintiffs' first supplemental petition was only made necessary by reason of the defendants' pleading title specially to the property in question, and it was proper and correct for plaintiff to reply and show that though plaintiff had sold the goods in question to Bateman & Bro., and though they had mortgaged same to pay antecedent debts, no title passed to appellants. Rivers v. Foote, 11 Texas, 662; Shields v. Hunt, 45 Texas, 425; Meyer v. Opperman, 76 Texas, 108.

2. Plaintiffs' petition was good and sufficient to entitle them to recover the value of the goods in question, although Bateman & Bro. had bought them of appellees by fraudulent representations, and had made a mortgage of them to appellants to secure creditors. 6 Wait's Act. and Def., p. 132; 2 Chit. Pl., p. 827, *835; 4 Am. and Eng. Encyc. of Law, 119; 2 Rice on Ev., pp. 957–960; Tied. on Sales, secs. 168, 170; 2 Estee's Pl., secs. 2098, 2100.

3. The plaintiffs had the right to sue any or all who had interfered with their right to the possession of the goods, and no one of the various tort-feasors had the right to make themselves parties to the suit or be made such at the instance of any other tort-feasor. Dicey on Part. to Act., p. 439; Hawes on Part. to Act., sec. 98.

The court did not err in permitting E. S. Gard to testify as to the contents of the memorandum furnished him by Bateman & Bro. in 1889, and if it was necessary to account for its loss before testifying as to its contents, that had been done. 1 Whart. Ev., sec. 148, note 1; Ramsey v. Hurley, 72 Texas, 194; Bank v. Scott, 16 S. W. Rep., 997; Bond v. Smith, 11 S. E. Rep., 326.

TARLTON, CHIEF JUSTICE.—This appeal is from a verdict and judgment in the sum of $3195, recovered by the appellees, as plaintiffs, from the appellants, as defendants. The recovery was had on the ground of the alleged conversion by the defendants to their own use and benefit, on December 23, 1890, of a certain number of barrels of rice and sugar, of which at that date the plaintiffs were the alleged owners.

The defendants, among other matters, specially pleaded, that on December 22, 1890, Bateman & Bro., a mercantile firm doing business at Fort Worth, Texas, were the owners of the property described; that as such they, on the date named, executed to the defendants, as trustees, a deed in trust, transferring all of their property, including the goods in question, for the purpose of securing a certain valid indebtedness amounting to the sum of $126,451; that if the plaintiffs ever had any right or title to the property claimed, they had long before the date of the deed in trust disposed of it to Bateman & Bro. They further alleged, that Bateman & Bro. and the several beneficiaries named in the deed in trust were necessary parties to the suit brought by the plaintiffs; and they prayed that the grantors and the beneficiary creditors should be made parties defendant.

The plaintiffs filed a supplemental petition, replying to the special answer of the defendants, and alleging, in effect, that in 1889 and 1890 the plaintiffs were merchants, doing business as such at Galveston, Texas, and that Bateman & Bro. were merchants doing business at Fort Worth, Texas; that during that period plaintiffs and Bateman Bro. were subscribers to Dun's Commercial Agency, whose business it was to furnish merchants information as to the standing of other merchants, conveying reports of the solvency and financial standing of merchants; that in 1889, Bateman & Bro. made a report to the commercial agency, stating that their assets, consisting of notes, accounts, merchandise on hand, bank stocks, and cash, aggregated $370,700; that their liabilities on open accounts and bills payable amounted to $210,000, and that their net worth over and above their liabilities was $160,700; that Bateman & Bro. intended that the commercial agency should communicate this report to persons desiring to consult it as to their commercial standing and financial ability; that for this purpose the plaintiffs did consult the report, saw the representation, and believed it to be true; that afterwards Bateman & Bro. communicated said information orally to the plaintiffs, and that, relying upon the representations thus furnished by the commercial agency and by the oral statements, the plaintiffs sold and delivered to Bateman & Bro. the goods in question; that at the time of making these statements Bateman & Bro. were insolvent; that the statements as to their assets and liabilities were false, as was well known to Bateman & Bro. at the time they were made; and that Bateman & Bro. did not intend to pay for

the goods, and had no reasonable expectation to believe that they would be able to pay for them.

The verdict of the jury, founded on conflicting evidence, establishes the truth of the material allegations contained in the supplemental petition, as above stated, and we are constrained by that verdict to conclude accordingly with reference to the matters of fact presented by that pleading.

*Opinion.*—1. We think that the supplemental petition performed in this instance the office of that character of pleading, in that its allegations were in avoidance of the special matter set up in the defendant's answer, viz., that Bateman & Bro. were entitled as owners to the goods in controversy, because of the sale thereof by the plaintiffs. The allegations of the supplemental petition set forth facts showing that no title passed by the sale relied upon by the defendants as a matter of special defense. In other words, the facts relied upon in replication to the special matter of defense avoided the effect of that defense. Morrison v. Adoue, 76 Texas, 255; Rivers v. Foote, 11 Texas, 662; Meyer v. Opperman, 76 Texas, 108.

2. The court held, that the beneficiaries in the trust deed were not necessary parties to this suit, and when the exceptions were presented raising the question, it held that Bateman & Bro., the grantors, were necessary parties. During the trial the latter ruling was reversed, and Bateman & Bro. were dismissed.

We are of opinion, that neither the makers of the deed in trust nor the beneficiaries were *necessary* parties to the proceeding, and so overrule the second assignment of error.

The ground on which it was sought to bring in these additional parties was to enable the defendants to have recourse for any judgment which might be rendered against them. As the makers of the deed in trust were insolvent, the redress thus sought as to them would be fruitless. As the beneficiaries were quite numerous—some twenty-five in number—and as there was no hostility of interest between them and the trustees, and as the latter could reasonably have been held to represent them (if indeed they had accepted the benefits of the transfer), the court, we think, correctly held them not to be necessary parties. Ebell v. Bursinger, 70 Texas, 120; Preston v. Carter, 80 Texas, 388.

Besides, we think that there is force in the contention of the appellees that the trustees, under the allegations of the plaintiffs, should be regarded as tort-feasors, in which event the suit could be maintained against them without joinder of other tort-feasors. Dicey on Part. to Act., p. 439; Hawes on Part. to Act., sec. 98; Sayles' Texas Pl., sec. 443. If the absent parties on being impleaded should adopt the acts of the trustees, they would be joint tort-feasors; if they repudiated them, the recourse of the defendants would be fruitless.

3. We are not prepared to hold that the court erred in admitting in evidence the paper purporting to be a report, or a copy of the report, of R. G. Dun's Commercial Agency. The testimony of the witness Gard, to the effect that the original, which he had taken, had been lost or misplaced, that he had looked for it, that he could not find it, and that the figures contained in the report, the correctness of which he recognized, were made by Bateman & Bro., was sufficient to justify the court's action in the matter complained of. So much of the report as did not emanate from Bateman & Bro. the court offered to exclude, but it was permitted to remain at the instance of the appellants.

The extent of the proof showing the loss of an instrument, and justifying secondary evidence of its contents, is necessarily to a great extent within the sound discretion of the trial court, and we are unable to hold, in the present instance, that this discretion was abused. As numerous copies were made of the original report, to be sent in various directions and to divers merchants, in consonance with the purpose of the report, it may well be conceived that the original would not be deemed of such importance as to require very close and circumspect custody. Whart. on Ev., sec. 148, note 3; Bonds v. Smith, 11 S. E. Rep., 322.

These remarks overrule the third and fourth assignments of error.

4. The testimony of R. B. Hawley and of Fen. Cannon, the admission of which is complained of in the fifth and eighth assignments of error, was properly heard. It related to conversations with a member of the firm of Bateman & Bro., and statements by him antedating the execution of the deed in trust. Its tendency was to support the allegations of the plaintiffs charging a fraudulent intent with reference to representations of solvency.

The witness Fen. Cannon was a creditor of Bateman & Bro., and evidence tending to show a fraudulent intent is not confined to the existence of that intent with reference to the persons complaining in the particular action, but the fraudulent design may be shown to have extended to others. The motive is a paramount question in issue, and where false representations are made by the same parties, closely connected in time, they beget the inference of a common origin in the same motive, and are therefore pertinent. Ins. Co. v. Armstrong, 117 U. S., 598.

5. The sixth, seventh, and ninth assignments of error present the question of greatest difficulty encountered by us. They complain of the action of the court in admitting in evidence conversations with the members of the firm of Bateman & Bro. with the plaintiff R. B. Hawley and with the witness Fen. Cannon, and of statements made by members of the firm *after their failure, and after their execution of the deed in trust.* The purport of these statements was to sustain the allegations in plaintiffs' petition of fraudulent intent on the part of

the makers of the deed in trust, and in that sense to defeat the instrument.

The sole objection urged to the admission of this testimony, as stated in the bills of exception and the assignments of error, was that the "statements and conversations occurred long after the purchase by Bateman & Bro. from plaintiffs of the goods in controversy, and said statements could not have influenced the said plaintiffs in extending credit to said Bateman & Bro.; and said statements were wholly irrelevant, and tended to prove no issue in this case."

It is well settled, that statements and declarations made by an assignor or grantor in an instrument after he has parted with title to the property can not be heard to defeat the sale.   Hinson v. Walker, 65 Texas, 103; Bump. on Fraud. Con., p. 587.

The reason of this rule is, that "after the transfer is consummated, the debtor becomes a stranger to the title for all purposes, and his acts and declarations are no more binding on the grantee than are those of any stranger to the transaction."   This rule is not applied where the debtor testifies as a witness, in which event his declarations may be used for the purpose of affecting the credibility of his testimony, apart from the question of "intrinsic competency."   Garahy v. Bayley, 25 Texas Supp., 294; Schmick v. Noel, 64 Texas, 406.

Nor is it applied where the "debtor and grantee are both parties to the suit," in which case the latter's "subsequent declarations are competent evidence against him."   Bump. on Fraud. Con., pp. 587, 588.

Here, as shown by an explanation of the trial judge appended to the bill of exceptions, it appears that Bateman & Bro. were parties to this suit at the time when this testimony was introduced.   It further appears, that each of the declarants testified in the case, and denied the making of the statements in question.   They were used as witnesses, and while these declarations were introduced as original evidence, they had the same opportunity to testify with reference to them as if a proper predicate had been laid for proving statements made out of court different from the statements made in court, and advantage was taken of this opportunity.

If, when the court at a subsequent stage of the proceedings dismissed Bateman & Bro. from the suit as unnecessary parties, it became the court's duty, of its own motion, to exclude these declarations, had the objection been urged that they were inadmissible because their tendency was to defeat the title transferred by the deed in trust, we are, nevertheless, not prepared to hold that the court erred with reference to the admission of the testimony when such an objection was in no way called to its attention, and is in no sense embodied in the assignments of error here considered. Disposing, therefore, of the objection as made, we overrule it.

6. The tenth assignment of error, complaining of the action of the court with reference to the testimony of the witness Gard regarding the object and purpose of Bateman & Bro. in subscribing for and using the report issued by Dun's Agency, is not considered, because it is accompanied neither by a statement from the record, nor by any appropriate proposition. We are not informed by any reference to the record that the statement consisted of the witness' mere opinion.

7. The testimony of W. Q. Bateman, heard over the objection of appellants, attesting the genuineness of the claims of the beneficiaries, could not have prejudiced the defendants.

8. The remaining assignments of error—save those which complain of the verdict of the jury as contrary to the evidence—criticise the action of the court with reference to its general charge, and to its refusal of special charges requested by the defendants. We think that the charge instructed the jury with substantial, though perhaps not with critical, accuracy with reference to the issues presented by the pleadings and the evidence upon the paramount question, whether the plaintiffs were entitled to avoid the sale of the goods in question to Bateman & Bro., and that the special instructions were properly refused.

We affirm the judgment.

*Affirmed.*

Delivered May 8, 1894.