WILSON v. BURCH et al.

(Court of Civil Appeals of Texas. Austin.
Dec. 3, 1913. Rehearing Denied
Jan. 28, 1914.)

1. BROKERS (§ 65*)—RIGHT TO COMMISSIONS—
UNAUTHORIZED TERMS IN CONTRACT—RATI-
FICATION BY OWNER.

An unauthorized provision in a contract
of sale, made by a broker, will not prevent his
recovering his commission, if the owner of the
property ratifies the contract.

[Ed. Note.—For other cases, see Brokers,
Cent. Dig. §§ 48–50; Dec. Dig. § 65.*]

2. BROKERS (§ 82*)—UNAUTHORIZED TERMS OF
SALE—RATIFICATION—PLEADING.

The issue of ratification of a contract of
sale made by a broker, containing unauthorized
provisions, is raised, in an action for commis-
sions, by the allegation of the answer that de-
fendant refused to accept said terms, and to
that extent repudiated the contract; Rev. Civ.
St. 1911, art. 1829, providing any special mat-
ter of defense pleaded by defendant shall be
regarded as denied, unless specially admitted.

[Ed. Note.—For other cases, see Brokers,
Cent. Dig. §§ 101–103; Dec. Dig. § 82.*]

3. APPEAL AND ERROR (§ 882*)—INVITED ER-
ROR—INSTRUCTIONS.

A party who has requested and obtained a
charge on an issue may not complain of its sub-
mission to the jury in the general charge.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 3591–3610; Dec. Dig. §
882.*]

4. BROKERS (§ 86*)—UNAUTHORIZED TERMS OF
SALE—RATIFICATION—EVIDENCE.

Evidence, in an action by a broker for
commissions *held* sufficient to sustain a finding
that defendant, with full knowledge of the con-
tents of the written contract of sale, made by
the broker, ratified it.

[Ed. Note.—For other cases, see Brokers,
Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

5. BROKERS (§ 64*)—RIGHT TO COMMISSIONS—
CONTRACT OF SALE—BREACH BY PURCHASER.

The contract of sale of land requiring a
perfect title, the purchaser did not breach it,
so as to deprive the broker of right to com-
missions, by demanding that a release be shown
of vendor's lien notes, to which the land was
subject, before he paid the purchase money,
and refusing to send such money to enable
the vendor therewith to obtain the release.

[Ed. Note.—For other cases, see Brokers,
Cent. Dig. §§ 67, 97; Dec. Dig. § 64.*]

Appeal from District Court, Liberty Coun-
ty; L. B. Hightower, Judge.

Action by G. W. Burch and another against
Charles Wilson. Judgment for plaintiffs, and
defendant appeals. Affirmed.

Marshall & Harrison, of Liberty, for appel-
lant. E. B. Pickett, Jr., of Liberty, for ap-
pellees.

JENKINS, J. Appellees, who are land
agents, telephoned appellant, Wilson, asking
him what he would take net for a 184⅔-
acre tract of land out of section 7, Texas
& New Orleans Railway survey. Appellant
replied he would take $10 cash per acre, and
would consult two other parties who were
joint owners with him as to the price they
would take. They agreed to the proposition
to sell for $10 cash, and appellees were so

notified. Appellees entered into a written
contract with G. A. Fairbanks, of Gettysburg,
S. D., to sell him said tract of land at $13
per acre, cash. We quote from said agree-
ment as follows: "Cash in hand $500; bal-
ance of the purchase price above mentioned
to be paid when the deed and abstract are
delivered, with a perfect title, at First Na-
tional Bank at Gettysburg, South Dakota,
same to be passed upon and accepted by at-
torneys or attorney of said G. A. Fairbanks.
It is further agreed and understood that, in
case the title to this land should prove de-
fective as passed upon by the attorneys of
the said G. A. Fairbanks, and cannot be made
good, then said $500, together with ten per
cent. interest, shall be returned to the said
G. A. Fairbanks at once on demand. It is
further agreed that the parties of the first
part agree to make deed and abstract, and
forward for examination and acceptance as
soon as practicable." This contract was
signed by Burch and Boyd in their own name;
they not being certain as to who were Wil-
son's associate owners. There was a judg-
ment for appellees for $3 per acre, as their
commission.

[1] 1. Appellees had no authority to con-
tract for the delivery of the deed and ab-
stract at the First National Bank at Gettys-
burg, S. D., nor that the same should be
passed upon and accepted by attorneys of
Fairbanks, and, unless appellant ratified said
contract, appellees were not entitled to judg-
ment. If appellant ratified the contract, it
is binding on him. 19 Cyc. 202, 220, 256, 296.
The court submitted the issue of ratification
to the jury, and they found in favor of ap-
pellees.

[2] 2. It is the contention of appellant that
the judgment of the trial court should be re-
versed, for the reasons, first, that the court err-
ed in submitting the issue of ratification to the
jury, because appellees had not pleaded ratifi-
cation; and, second, that there was no evidence
to sustain the finding of the jury on this
issue. Appellant, among other things, alleged
in his answer "that this defendant and his
associates refused to accept said terms, and
to that extent [referring to the consummation
of the deal in South Dakota, and the accept-
ance of title by Fairbanks' attorney] repudi-
ated the contract of said Burch and Boyd."
This, we think, was sufficient to raise the is-
sue of ratification. R. S. art. 1829; Cook v.
Greenberg, 34 S. W. 688; Railway Co. v.
Avis, 100 Tex. 33, 93 S. W. 425; McKinney
v. Nunn, 82 Tex. 44, 17 S. W. 516; Meyer
v. Oppermann, 76 Tex. 108, 13 S. W. 174.

[3] 3. Evidence as to this issue was offered
without objection, and appellant requested
the following special charge, which was giv-
en: "You are instructed that, before any act
or conduct of the defendant, Charles Wilson,
or his co-owners could be taken or held as a
circumstance tending to a ratification of or
acquiescence in the terms of the contract

that was made between Burch and Boyd on one part and Fairbanks on the other part, it is necessary that said Wilson or his associates should have known or have had knowledge of the terms of said contract in which said acts or conduct is claimed to have shown ratification or acquiescence." Having requested and obtained a charge on this issue, appellant cannot complain of its submission to the jury in the general charge. Freeman v. Wilson, 149 S. W. 416; Beef Co. v. Yeargan, 123 S. W. 723; Railway Co. v. Smith, 155 S. W. 363; Oil Co. v. Gathings, 154 S. W. 668; Fessinger v. Times Co., 154 S. W. 1174.

[4] 4. Upon the issue of ratification, appellee Burch testified as follows: "It seems to me like it was about a week after it (the contract) was entered into that I showed it to Mr. Wilson. I took it and went over to Dayton, and showed it to him in his office. When I showed it to him, he said, 'We ought to have closed it up here—have an attorney to pass on it here.' The answer I gave him to that was that I told him I tried to get Fairbanks to have it passed on, the abstract of title, here. Mr. Fairbanks said he wanted it passed on by his attorney up there, and to that Mr. Wilson said, 'All right, go ahead, make the deed and abstract, and send it to them.'" This, we think, is sufficient evidence to sustain the finding that appellant, with full knowledge of the contents of the written contract, ratified the same.

[5] 5. The evidence shows that Wilson and his associates owned 621 acres out of section 7, Texas & New Orleans Railway survey, of which the 184⅔ acres was a part, and that there was a vendor's lien on the entire tract owned by them for about $3,500, evidenced by four notes, and that one of said notes was paid off pending negotiations, leaving about $2,650 due on said notes. Appellant and his associates furnished an abstract and executed a deed to said land, and sent the same to the First National Bank at Gettysburg, S. D., with instructions to deliver the same to Fairbanks upon payment of attached draft for balance of the purchase money. It was shown that the title to said land was clear, except as to the vendor's lien above mentioned. Fairbanks, upon advice of his attorneys, declined to pay for the land until release of the vendor's lien was furnished. Wilson wrote Fairbanks that, if he would send the balance of the purchase money to a bank at Liberty, to be used by him in payment of the vendor's lien notes, he would pay said notes off, and furnish a release of the vendor's lien at the time the money was paid over to him. Fairbanks declined to do so, demanding that the release of the lien be sent to the bank at Gettysburg, S. D., before he paid the purchase money. Thereupon Wilson ordered the deed and abstract returned to him. It was shown that Wilson was able to have borrowed the money

with which to pay off the vendor's lien notes, and that the owner of the lien would have released the same upon payment of said notes, but that Wilson and his associates did not desire to pay off the lien on the entire tract of land, unless this sale was consummated. Appellant insists that appellees did not furnish a buyer who was ready, able, and willing to take the land at the price agreed upon in said contract, in that it was Fairbanks' fault that the trade was not consummated. The evidence shows that Fairbanks was able and willing to take the land in accordance with his contract of purchase; that is, the abstract should show a perfect title before he paid for the same. While the evidence shows that Wilson was able to pay off the vendor's lien notes, and thereby furnish good title, he was unwilling to do so, except upon the terms demanded by him; that is, that Fairbanks should send the remainder of the purchase money to a bank at Liberty, to be used in discharging said vendor's lien notes. From this, it appears that Fairbanks did not breach the contract.

For the reasons above given, the judgment of the trial court is affirmed.

Affirmed.