## VILLAGE OF UNIVERSITY HEIGHTS et al. v. CLEVELAND JEWISH ORPHANS' HOME.

Circuit Court of Appeals, Sixth Circuit. July 29, 1927.

No. 4724.

1. **Municipal corporations** ☞625—Zoning ordinance, excluding Jewish Orphans' Home from residential district, held unreasonable.

Zoning ordinance, as applied to Jewish Orphans' Home, sought to be constructed in residential district, *held* unreasonable.

2. **Municipal corporations** ☞589—Municipality cannot prohibit lawful acts, which merely do not affirmatively serve public welfare.

A municipality has no power to prohibit the doing of lawful acts, which merely do not affirmatively serve the public convenience or welfare.

3. **Municipal corporations** ☞601—Under police power, city cannot exclude orphanage merely because children have same religious belief or nationality.

Police power of city does not extend to the exclusion of an orphanage therefrom, merely because the children in the orphanage are of the same religious belief or nationality, or may attend a single school.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit by the Cleveland Jewish Orphans' Home against the Village of University Heights and John Migchelbrink, Inspector of Buildings. Decree for plaintiff, and defendants appeal. Affirmed.

Snyder, Henry, Thomsen, Ford & Seagrave and Robert E. Roehm, Village Sol., all of Cleveland, Ohio (Alonzo M. Snyder, of Cleveland, Ohio, on the brief), for appellants.

Newton D. Baker, Baker, Hostetler & Sidlo, and Fackler & Morgan, all of Cleveland, Ohio, for appellee.

Before DENISON and MOORMAN, Circuit Judges, and DAWSON, District Judge.

MOORMAN, Circuit Judge. This case involves the constitutionality of a general zoning ordinance of the village of University Heights, a suburb of the city of Cleveland. The question is here on appeal from a judgment of the District Court enjoining the village from enforcing the ordinance, so far as it operates to prevent the Cleveland Jewish Orphans' Home from using some land which it owns in the village for an orphanage. There are 30 acres in the tract, 5 of which are within the adjoining village of Shaker Heights. The proposed orphanage is to be built upon the cottage plan, with a central heating and power plant, each cottage to accommodate about 25 persons. .

[1] The preamble of the ordinance recites, among other things, that the village of University Heights is a residential suburb, having no steam railroads or industrial establishments within its limits; that the streets, sewers, and water improvements therein were designed and constructed to take care of residential uses and would prove inadequate for others; that none of the land in the village need be devoted to industrial or commercial purposes, as there is adequate land for such uses easily accessible from the village; and that it is the desire of the council of the village to preserve its residential character, which is in the interest of the health, safety, convenience, comfort, and prosperity of the citizens of the village. Six classes of uses within the village are provided for, as indicated on a zone map which was made a part of the ordinance. Owners of the land, desiring to build thereon, are required to apply for and receive permits to erect the buildings and to comply with the requirement of the ordinance in the erection and use of such buildings.

The ordinance creates a planning and zoning commission, which is given discretion to relax restrictions in certain instances. The land which appellee proposes to use is within a class U–1 district, in which an orphanage may not be constructed unless it is placed, as provided in section 4 of the ordinance: (1) On a lot already devoted to such use; (2) on a lot fronting any portion of a street between two intersecting streets, in which portion there exists such a building; (3) on a lot immediately adjacent to or across the street from a public park or a public playground; (4) on a lot immediately adjoining or immediately opposite on the other side of the street from a class U–2 or U–3 district; or (5) on a lot determined by the village planning and zoning commission, after public notice and hearing, to be so located that such building, in the judgment of the commission, will substantially serve the public convenience and welfare, and will not substantially and permanently injure the appropriate use of neighboring property.

The land which appellee owns does not come within any of the first four descriptions. Application to use it for an orphanage, with a plan of buildings, was filed with the planning and zoning commission under subsection 5 of section 4 of the ordinance. The application was denied, after which this suit was filed. It was not found by the commission that the proposed buildings violated any regulation in respect to height, area, construction, or set-back lines, but it was found that the public convenience and welfare would not be served by the intended use.

In Village of Euclid v. Ambler Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. ——, an ordinance similar to the one involved here was upheld in its general exclusion from certain districts of "apartment houses, business houses, retail stores and shops, and other like establishments"; but it was pointed out that, when the provisions of such an ordinance came to be applied to particular premises, or "to particular conditions, or to be considered in connection with specific complaints, some of them, or even many of them, may be found to be clearly arbitrary and unreasonable." Again in Zahn v. Board of Public Works, 47 S. Ct. 594, 71 L. Ed. ——, the Supreme Court sustained an ordinance excluding business buildings from a district of the city of Los Angeles restricted against buildings of that character; and in the later case of Gorieb v. Fox, 47 S. Ct. 675, 71 L. Ed. ——, the court sustained an ordinance of the city of Roanoke, Va., establishing set-back lines in certain districts. The Ambler Case contains an elaborate discussion of the authorities, and, while

the ordinance was sustained generally, the court said, in concluding its opinion: "It is enough for us to determine, as we do, that the ordinance in its general scope and dominant features, so far as its provisions are here involved, is a valid exercise of authority, leaving other provisions to be dealt with as cases arise directly involving them." Both this and the two succeeding cases announce the rule that the conclusion of the legislative authorities in respect to the necessity, character, and degree of regulation as expressed in the legislative act should not be disturbed by the courts, "unless clearly arbitrary and unreasonable."

The structural plans of the proposed orphanage comply with all the requirements of the village. There is no objection to the buildings per se, but only to the use of them as a home for a large number of children. If they were intended for a private school, or for private residences, their use as such would not and could not be prohibited. The question is whether the proposed use is so different in character from concededly legitimate uses as to bring it within the scope of the police power of the municipality. That power has been held, as we have seen, to include the right generally to exclude business houses, stores, shops, and apartment houses from strictly residential districts. It has never been held to include the right to prohibit the use for orphan children of cottages built according to the requirements of the municipality. We can see many valid reasons, affecting the public welfare, which would justify the exclusion of factories, business houses, shops, and even apartment houses from strictly residential districts, but which would not apply to the use of structurally proper cottages for an orphanage; and while an orphanage would no doubt be less agreeable to the community in some respects than a private school or private residences, we are unwilling to hold that it is within the power of the village to prohibit the use of cottages of this character for that purpose.

Our conclusion, as just stated, is fortified, we think, by the action of the municipality itself; for, although it may be said that the council generally determined that land in a class U-1 district could not be used for an orphanage, it also determined that, if it came within the description of any of the first four subsections of section 4, such use was permissible, and furthermore would be permitted in other parts of class U-1 territory under circumstances different from those specifically prescribed, if after public notice and hearing the planning and zoning commission should determine that such use would substantially serve the public convenience and welfare, and would not substantially and permanently injure the appropriate use of neighboring property.

[2] A municipality, so far as we are informed, has no power to prohibit the doing of lawful acts which do not affirmatively appear to serve the public convenience or welfare; and we assume, for the purpose of this case, that the municipality acted upon the theory that an institution of this kind would adversely affect a class U-1 district for residential purposes, but in certain environments indicated in the ordinance the effect would be too slight to come within the scope or justify the exercise of the power of prohibition. The planning and zoning commission did not find facts peculiar to the location of appellee's property justifying the denial of its use, but based its action upon financial and social considerations applicable to all parts of the village, as follows: First, that the land would be withdrawn from the tax duplicates, resulting in a loss of assessed values to the city; second, that there would be a larger number of children attending the local school, which would require additional accounting and inspection by the board of education, and might result, notwithstanding the offer of the institution to provide part of the finances for additional school buildings, in an additional outlay for buildings and equipment; and, third, that the public welfare would be further affected, because in the opinion of the commission a school in any community, predominantly attended by the children of a single race, creed, or nationality, is hurtful to the community.

All of these reasons given by the commission for its finding, would be equally applicable to a like use of any other land in the village. They would also apply in certain aspects, but in a lesser degree, to the use of the cottages in question for private schools or by families with large numbers of children of a single nationality or religious faith. It is stated, to be sure, in argument, but not in the report of the commission, that the intended use would increase the fire hazards, and would probably result in traffic congestion. These same objections could be made to an orphanage in any part of a class U-1 district where it is permitted—perhaps in any other part of the village. There are in the village other tracts of vacant and unplatted land, in all respects similar to appellee's tract, but which have abutting on them one or more lots of class U-2 territory,

where double or two-family houses may be built. Because of this seemingly unimportant detail in the environment, the ordinance permits these other tracts to be devoted to this kind of orphanage use, while appellee's tract cannot be. It thus appears that the use is permitted in one instance, but denied in another under like circumstances.

[3] It is to be presumed, as we have indicated, that the permitted use rests upon the determination by the village that its effect upon the community would be too slight to come within the scope or justify the right of prohibition, in view of which, with the other considerations referred to, we must hold that the restriction as affecting the use intended by appellee is unreasonable. It, of course, cannot be said that the police power of a city extends to the exclusion of an orphanage therefrom because the children in the orphanage are of the same religious belief or nationality, or may attend a single school.

We do not doubt that the ordinance is a valid enactment in its general aspects, but as applied to this case it is, we think, unreasonable.

The judgment is affirmed.