## WOMEN'S KANSAS CITY ST. ANDREW SOC. v. KANSAS CITY, MO.

No. 1529.

District Court, W. D. Missouri, W. D.

July 20, 1931.

Frank Schibsby (of Reinhardt & Schibsby), of Kansas City, Mo., for Kansas City St. Andrew Society.

Marcy K. Brown, Jr., Asst. City Counselor, and John B. Pew, both of Kansas City, Mo., for Kansas City.

REEVES, District Judge.

This is an action to enjoin the defendant from interfering with the plaintiff in its conduct of a home for aged and dependent white women. For its liberation for said purpose it seeks to have this court declare certain provisions of a zoning ordinance of the defendant unconstitutional. A state statute is in like manner assailed.

In June, 1923, the defendant enacted a comprehensive zoning ordinance "for the promotion of the public health, safety, convenience, comfort, prosperity and general welfare." By such ordinance restrictions and regulations were placed upon the erection of buildings and their uses. For the practical enforcement of said ordinance, the city was "divided into seven classes of use districts, termed, respectively, class U-1 and class U-2, or residence districts," etc. In addition, there were five classes of "height" districts and also five classes of "area" districts.

The controversy herein relates solely to class U-1, residence district, and the proper use thereof.

Plaintiff seeks to utilize the residence property now owned by it, and described as No. 500 East Forty-Fifth street, as a home for not more than twelve aged and dependent white women. It appears from the bill that plaintiff is "a charitable corporation."

Concededly, said property is within class U-1 or residence district of said ordinance. Plaintiff's chief complaint is that by said ordinance institutions of the character of that proposed by plaintiff are placed in class U-7, and that such classification comprehends only cemeteries, crematories, sewage refuse or garbage disposal plants, refuse dumps, aviation fields, amusement parks, philanthropic or eleemosynary institutions, hospitals, sanitaria, institutions for the care of feeble-minded or insane, and penal or correctional institutions. Moreover, it is alleged that no specific districts have been allocated for U-7 uses.

Heretofore, according to the bill, plaintiff sought modification of the provisions of said zoning ordinance through the legislative body of defendant. Perforce the provisions of section 7263, article 11, c. 38, R. S. Mo. 1929, relating to the subject of "building zones or districts in certain cities," and due to a protest by the owners of 10 per cent. of the areas affected, such modification failed to receive the support of "three-fourths of all the members of the legislative body," although it did in fact receive a bare majority.

Plaintiff assails the constitutionality of said statute upon the ground that it is a delegation of legislative authority to unofficial persons who by their protest may shape a legislative policy.

The defendant, by its answer, asserts that a complete and comprehensive plan is provided for in said ordinance and under the statutes of Missouri whereby appropriate permits may be granted to devote property of other classes to the uses provided for in class U-7. Other allegations of the answer admit practically all the averments of plaintiff's bill, save only that it denies the invalidity of either the ordinance or statute challenged by plaintiff.

The defendant asserts a former adjudication of the matters here involved.

The evidence in the case tended to show that said property was readily adaptable for use as a home for twelve aged and dependent women, and that its value for that purpose would be approximately $43,000, whereas for residential purposes it would not exceed $30,000. It appeared further that the immediate district had declined or deteriorated for residential purposes, and was surrounded for the most part by duplexes and apartment houses. This was not disputed by the defendant, but on its part the evidence tended to show that immediately south of the locus was a large area appropriated for an art gallery and other cultural and educational purposes, and on the southeast there is a restricted and exclusive residential district. This, according to the evidence, would be affected adversely by the establishment of a charitable institution in such close proximity.

There was evidence that such an institution would discourage the sale of property and would adversely affect the attitude of the residents therein in the matter of future restrictions. Evidence of those who had become expert in city planning was to the effect that a relaxation of the restrictions on the locus would have the effect of an "entering wedge," and that, although said locus was at present in the neighborhood of prop-

erty used other than for exclusively residential purposes, yet the maintenance of such restrictions thereon would make it a "buffer" as against encroachments upon defendant's cultural and educational center and its exclusive residential district.

Such additional facts as may be deemed pertinent will be stated in the course of this memorandum opinion.

■ 1. As a preliminary to a decision of this cause, the following basic principles should be stated: "Zoning measures must find their justification in the police power exerted in the interest of the public." Seattle Trust Company v. Roberge, 278 U. S. 116, 49 S. Ct. 50, 51, 73 L. Ed. 210. That the ordinance in question, in its general terms, is within the police power of the city, is settled by the clear pronouncement of Euclid v. Ambler Co., 272 U. S. 365, 47 S. Ct. 114, 118, 71 L. Ed. 303, 54 A. L. R. 1016. Assuming, therefore, that the ordinance under consideration is within the police power, the following basic principles become apposite:

(a) "The legislative body intrusted with the police power has a wide discretion which cannot be interfered with by the courts. Their laws or ordinances enacted in pursuance of the police power are invested with a strong presumption of validity. If the question as to whether or not the legislation is unreasonable or arbitrary or an unequal exercise of power is fairly debatable, the legislation must be upheld as valid." Marblehead Land Co. v. City of Los Angeles (C. C. A.) 47 F.(2d) 528 loc. cit. 532. See, also, Zahn v. Board of Public Works, 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074.

■ (b) On the other hand, "Legislatures may not, under the guise of the police power impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities." Seattle Trust Co. v. Roberge, supra.

Zoning regulations are of comparative recent origin, and the trend of the courts is decidedly to support the power of the cities to restrict and regulate the use of property. Euclid v. Ambler Co., supra.

■ 2. In view of the foregoing, it must be conceded that said ordinance in its general aspects is valid and proper. Clearly it is within the right of the city, under its police power, to zone its area and to provide such restrictions upon exclusive residential districts as to preserve their integrity and safeguard

them against the invasion of hurtful and undesirable activities.

■ As was well said in the Euclid Case, supra, such police power can only be "asserted for the public welfare" and "varies with circumstances and conditions." If the use of the property of one person injures the property of another, then unquestionably the power exists. Moreover, the existence of such power cannot be determined by abstract considerations but by considering it in connection with the circumstances and the locality. Furthermore, "the inclusion of a reasonable margin, to insure effective enforcement, will not put upon a law, otherwise valid, the stamp of invalidity." Euclid v. Ambler Company, supra, loc. cit. 388 and 389 of 272 U. S., 47 S. Ct. 114, 118.

It may be granted that the proposed charity is innocent and innocuous even when carried on in the presence of a cultural and educational center and in an exclusive and carefully restricted residential district, yet its exclusion from the district might be solely "to insure an effective enforcement" of the restriction. It might be difficult or impractical to exclude other activities if the locus enjoyed this special privilege.

The proposed use is laudable and commendable. It is a splendid charity, but, in the language of the Euclid Case, it might be "a right thing in the wrong place."

■ 3. Plaintiff says that said ordinance is unreasonable and arbitrary because it fails to make provisions for the exercise of charities such as that contemplated. On the contrary, the ordinance specifically provides that:

"The Board of Zoning Appeals may, in specific cases, * * * subject to appropriate conditions and safeguards determine and vary the application of the use district regulations herein established in harmony with their general purposes and intent as follows: * * *

"(e) Permit the location of a class U–7 use in any use district provided such location will not seriously injure the appropriate use of neighboring property."

There is a further provision which requires legislative action to make effective the regulations or orders of the zoning board of appeals.

It will be seen, therefore, that any of the districts of Kansas City may be used by permission of the city's legislative authority for the purposes and uses contemplated by plain-

tiff. Plaintiff heretofore in conformity with such procedure endeavored to secure from the defendant's legislative body permission to use the locus for its charity.

Said zoning ordinance cannot be declared unreasonable or arbitrary because it does not specifically allocate charities of this character to specific districts. It opens all the use districts for the exercise of its charity, subject only to the legislative will.

4. The main question is whether the exercise of plaintiff's charity at the locus would be inimical to the public welfare. The court is not called upon to substitute its judgment for that of the legislative body charged with the duty of determining the necessity and character of the regulation. This, of course, could not be done. Koch et al. v. City of Toledo et al. (C. C. A.) 37 F.(2d) 336.

Is the ordinance under observation, valid in its general aspects, arbitrary and unreasonable, as applied to the facts here presented? Even if harmless within itself, would it not open the door to similar activities and thereby seriously hamper effective enforcement of the regulation? An affirmative answer must be given to the last question. A similar charity upon a much larger scale might be proposed, or many kindred charities could claim the privilege with equal propriety. To say the least, it is within "a reasonable margin to insure effective enforcement."

5. Section 7263, R. S. Mo. 1929, is invulnerable as against an attack on constitutional grounds. The fact that the legislative body may heed the voice of protest is not a delegation of legislative authority. By this section, upon protest of property owners, restrictions can be relaxed only upon an affirmative vote of three-fourths of the membership in such legislative body.

In Cusack Co. v. City of Chicago, 242 U. S. 526, loc. cit. 531, 37 S. Ct. 190, 192, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594, the court covered this identical situation in the following language: "The ordinance in the case at bar absolutely prohibits the erection of any billboards in the blocks designated, but permits this prohibition to be modified with the consent of the persons who are to be most affected by such modification. * * * This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances."

6. Turning to the authorities urged by plaintiff in support of its contention, the chief one is that of the Village of University Heights et al. v. Cleveland Jewish Orphans' Home (C. C. A.) 20 F.(2d) 743, 745, 54 A. L. R. 1008. In this case it was desired to utilize a restricted district for an orphans' home contrary to the provisions of an ordinance. It was urged as here that said ordinance was clearly arbitrary and unreasonable in view of the facts. The court said: "The structural plans of the proposed orphanage comply with all the requirements of the village. There is no objection to the buildings per se, but only to the use of them as a home for a large number of children. If they were intended for a private school, or for private residences, their use as such would not and could not be prohibited. The question is whether the proposed use is so different in character from concededly legitimate uses as to bring it within the scope of the police power of the municipality. That power has been held, as we have seen, to include the right generally to exclude business houses, stores, shops, and apartment houses from strictly residential districts. It has never been held to include the right to prohibit the use for orphan children of cottages built according to the requirements of the municipality. * * * While an orphanage would no doubt be less agreeable to the community in some respects than a private school or private residences, we are unwilling to hold that it is within the power of the village to prohibit the use of cottages of this character for that purpose."

In the instant case, the proposed use is far different in character from concededly legitimate uses. The proposed use is a charity pure and simple. The locus loses its character as a residence within the restrictions of the ordinance. In the orphans' home case cited, the reasons for the enforcement of the restriction, interposed by the village, were not sufficient in the judgment of the court to support the validity of the ordinance.

Moreover, there is a difference between urban conditions in the orphanage case and the instant case.

In the former it was proposed to build cottages with a central heating and power plant on that portion of a thirty-acre tract lying within the U–1 class, or residential district. There were five acres in such portion.

The opinion of the court does not disclose if the proposed use trenched or encroached upon a definitely planned residential section or other important civic enterprise. In the case at bar, the encroachment is definitely up-

on a residential section as well as an educational and cultural center.

In the case of Nectow v. Cambridge, 277 U. S. 183, 48 S. Ct. 447, 448, 72 L. Ed. 842, the ordinance was declared invalid because it appeared "with reasonable certainty that the inclusion of the locus in question is not indispensable to the general plan."

In the instant case, it does appear with reasonable certainty that the inclusion of the locus is indispensable to the general plan. On that question, it was at least fairly debatable, and under such circumstances the court will not interfere. Marblehead Land Co. v. City of Los Angeles, supra; Zahn v. Public Works, supra. Other cases cited by plaintiff have been examined and carefully considered.

7. The locus was acquired by plaintiff long after the enactment of defendant's Zoning Ordinance. The restrictions were well known. Plaintiff assails its validity, and in such case it is well settled that, when an ordinance is passed relating to a matter which is within the legislative power of the municipality, all presumptions must be indulged in favor of its validity, and, when it is attacked, the burden is on the party alleging its invalidity to establish that fact. New Orleans Public Service, Inc. v. City of New Orleans, 281 U. S. 682, 50 S. Ct. 449, 74 L. Ed. 1115; 19 R. C. L. § 113, p. 808. Such burden has not been borne.

In view of the above, it is unnecessary to discuss the question of former adjudication.

Plaintiff has not established the fact of the invalidity of said ordinance, and, accordingly, its bill will be dismissed. It is so ordered.