# CITY OF CORPUS CHRISTI et al. v. JONES et al.

No. 10630.

Court of Civil Appeals of Texas. San Antonio.

Oct. 2, 1940.

Rehearing Denied Nov. 6, 1940.

Carr & King and J. P. Simpson, all of Corpus Christi, for appellants.

Mobley, Roberts & Lockett and Boone, Henderson, Boone & Davis, all of Corpus Christi, for appellees.

NORVELL, Justice.

This is an appeal from a judgment of the District Court of Nueces County wherein the City of Corpus Christi, its governing officials, servants and employees are per-

petually enjoined and restrained from enforcing, or attempting to enforce, a zoning ordinance for said City of Corpus Christi, which was adopted on August 27, 1937, as against appellees or their property.

Plaintiffs in the court below, appellees here, are: D. M. Jones, Frank M. Jones, A. D. Jones and A. G. Gill, who are partners and doing business under the firm name and style of Independent Ice Company.

Trial was to the court and, upon proper request, lengthy findings of fact and conclusions of law were prepared and filed in the case. The trial court held that said zoning ordinance was void in its entirety and also that the particular provisions affecting appellees' property were invalid and unenforcible in their application to said property.

The record in this case is very lengthy and a seriatim discussion of the trial court's findings of fact and the evidence relied upon to support the same would unduly lengthen this opinion and for that reason is impracticable.

The ordinance under attack here was adopted by the City of Corpus Christi on August 27, 1937, in pursuance of the provisions of Chapter 283 of the Acts of the 40th Legislature. This Act is codified as Articles 1011a to 1011j, Vernon's Annotated Texas Civil Statutes, and is sometimes referred to as the "Zoning Enabling Act." In the case of Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, this Act was fully discussed and held to be a valid constitutional exercise of legislative power. That case also held that the Zoning Ordinance of the City of Dallas was in general a valid constitutional exercise of the police power delegated to the governing body of the City of Dallas by the Zoning Enabling Act of the Legislature.

The Zoning Ordinance of the City of Corpus Christi involved here is patterned after the Zoning Ordinance of the City of Dallas, which was involved in the Lombardo case. The two ordinances, however, do differ as to certain particulars hereinafter mentioned.

On October 18, 1937, after the adoption of the Corpus Christi Zoning Ordinance, appellees purchased a tract of land located at 507 South Staples Street in the City of Corpus Christi, within the boundaries of the Commercial District, as defined by the Zoning Ordinance. They secured a permit to erect a building thereon from the office of the City Engineer of Corpus Christi. This building was erected and machinery installed for the purpose of manufacturing ice. It is the intention of appellees also to erect a cold storage plant upon their property. Appellees were engaged in the business of manufacturing and selling ice in their plant on South Staples Street when the officials of Corpus Christi threatened to close the plant, contending it was being operated in violation of the Zoning Ordinance. Appellees thereupon filed this suit.

■ Appellees contend that the City of Corpus Christi is estopped from enforcing the provisions of the Zoning Ordinance with reference to their property as the City Engineer issued a permit for the erection of the building, and no city official informed appellees that the erection of an ice manufacturing plant would be violative of a zoning ordinance, although there was considerable newspaper publicity as to the proposed construction of the plant. This contention was overruled by the trial court and that holding must be sustained here.

■■ A zoning ordinance, or use regulation, is for the purpose of promoting the health, safety, morals and the general welfare of the community. Such regulations represent an exercise of the police power by a municipality in its governmental capacity. The fact that a city official or employee fails in certain particulars to enforce the regulation cannot render it invalid, nor estop the City from asserting its validity. City of Amarillo v. Stapf, 129 Tex. 81, 101 S.W.2d 229. We are not here concerned with a situation where a long-continued failure to enforce a zoning ordinance has resulted in the development of a de facto industrial district in a restricted area, which would render a belated attempt at enforcement ineffective and useless in promoting the public health, safety, morals or general welfare of the community.

■ Appellees also present the contention that the zoning ordinance of the City is void in its entirety because of a lack of public notice or publication as required by law.

Article 1011d provides that "no such [zoning] regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least 15 days' notice of the time and place of such

hearing shall be published in an official paper, or a paper of general circulation, in such municipality."

On July 23, 1937, there was published in the Corpus Christi Church Press and Weekly News a notice that a public hearing would be held by the City Council of the City of Corpus Christi on the 9th day of August, concerning the establishment of zoning districts and adopting regulations and restrictions therein. This notice was dated the 20th day of July, signed by the Mayor and City Secretary of the City. Immediately following this notice there was also published a copy of the proposed zoning ordinance. This ordinance makes reference to a map showing the respective areas within the limits of the City classified as to uses. This map did not appear as a part of the publication notice or of the ordinance.

Hearings were had before the City Council in pursuance of said notice, and as a result thereof certain minor changes were made in the terms of the proposed ordinance and boundaries of the use districts provided for therein. None of these changes affected the property afterwards purchased by appellees in any way. No further publication of notice was made prior to the enactment of the ordinance on August 27th. On September 3, 1937, the entire ordinance and map which was a part thereof were published in the Corpus Christi Press and Weekly News, the same paper that published the notice on August 9th, but it had eliminated the word "Church" from its name between the dates of the two publications.

Appellees contend that this newspaper was neither "an official paper," of the City "nor a paper of general circulation" in the municipality, and the trial court agreed with these contentions. As Article 1011d provides that the notice presented therein may be published in either the official paper of the City or one of general circulation in the municipality, it is not necessary for us to determine whether or not the Corpus Christi Church Press and Weekly News was the "official paper" of the City at the time of the publication of the notice, on July 23, 1937, as in our opinion the evidence conclusively shows that such newspaper was on that date a paper of general circulation.

The only evidence introduced upon this point was the testimony of the editor, Frank B. Harrison, and copies of the paper, the issues of July 23 and September 3, 1937. Mr. Harrison testified that these two issues were representative of the usual contents of his paper; that it had a circulation of about 4000 in a city of about 45,000 population; that about 1200 copies were delivered to paid subscribers, and although it featured church and Corpus Christi news, it was not dedicated to any private enterprise. An inspection of the issues of the paper contained in the statement of facts indicates that although publicity was given to the activities of churches and religious organizations, the news coverage was not restricted to such activities. The paper contained news items of general interest, editorials and advertisements. It was a paper of "general circulation" as that term is used in Article 1011d. Hurt v. Cooper, 63 Tex. 362; Meyer v. Opperman, 76 Tex. 105, 13 S.W. 174; Kerr v. Hitt, 75 Ill. 51, 53; Kellogg v. Carrico, 47 Mo. 157, 158; Hernandez v. Drake, 81 Ill. 34; Hull v. King, 38 Minn. 349, 37 N.W. 792; Hanscom v. Meyer, 60 Neb. 68, 82 N. W. 114, 48 L.R.A. 409, 83 Am.St.Rep. 507; Burak v. Ditson, 209 Iowa 926, 229 N.W. 227, 68 A.L.R. 538; Culclasure v. Consolidated Bonding & Mortgage Co., 94 Fla. 764, 114 So. 540; Baldwin v. Brown, 193 Cal. 345, 224 P. 462; In re Labor Journal, 190 Cal. 500, 213 P. 498; Lynn v. Allen, 145 Ind. 584, 44 N.E. 646, 33 L.R.A. 779, 57 Am.St.Rep. 223.

Appellees further contend that as certain minor changes were made in the ordinance recommended by the Zoning Commission prior to its final enactment by the City Council, on August 27, 1937, the Ordinance is invalid. These contentions are overruled. The Zoning Enabling Act provides for the appointment of a Zoning Commission, which shall make a final report to the legislative body of the City as to boundaries of proposed zoning districts and regulations relating thereto. (Article 1011f.) Before the recommendations of the Zoning Commission can be enacted into law, however, a public hearing must be held in regard thereto, and fifteen days' notice of such hearing given by newspaper publication. (Article 1011d.) One of the purposes of these public hearings is obviously to give property owners an opportunity to discuss or protest any particular regulation, restriction or boundary proposed by the Zoning Commission. After such hearing, the legislative body of the City necessarily has the power to make changes in the regulatory provisions rec

ommended by the Zoning Commission. The statutory hearing as to such matters having been held, it is not necessary that another notice be given to render these changes effective. A hearing has been held in relation to a boundary, for instance, even though as a result of such hearing the suggested boundary line is modified or changed in some particular. We are here concerned with notice of a hearing to consider the provisions of a comprehensive Zoning Ordinance recommended for adoption by the Zoning Commission and not with amendments to an ordinance previously enacted. It further appears that none of the minor changes made in the ordinance proposed by the Zoning Commission, after the statutory hearing had been held, affected the property afterwards acquired by appellees in any way and therefore appellees are in no position to complain with reference thereto.

We also overrule appellees' contention that the publication of the notice published on July 23, 1937, was ineffective because the zoning map was not published as a part thereof. Article 1011d requires only that a notice be given. It does not provide that the entire proposed ordinance or any map that might be a part thereof shall be published.

Appellees also contend that the Zoning Ordinance is unenforcible because it is penal in character and was not published in an "official paper" of the City after its passage, in accordance with the provisions of Article 1013, Vernon's Annotated Texas Civil Statutes. The City of Corpus Christi was chartered by special act of the Legislature and this Act or Charter does not provide that penal ordinances shall be published before they can become operative. However, it is not necessary for us to decide whether Article 1013 applies to cities chartered other than by general law, as we are of the opinion that when the provisions of Article 1011d as to notice are complied with further publication is unnecessary. This Article is a part of the Zoning Enabling Act relating to a specific type of penal ordinance. The publication of the notice has for one of its purposes the giving of publicity of the existence or contemplated passage of the ordinance. This is the obvious purpose of Article 1013. The Zoning Enabling Act was passed in 1927, while Article 1013 is a part of the Acts of 1889, carried forward in the 1925 codification. In our opinion, it was the legislative intention that the specific provisions of Article 1011d should apply to zoning ordinances rather than the general provisions of Article 1013.

If we are mistaken in this, however, the record shows that the entire ordinance, including the zoning map, was published in the Corpus Christi Press and Weekly News (a weekly newspaper) on September 3, 1937.

The record further discloses that on August 27, 1937, the City Council of Corpus Christi passed the following motion: "Motion by Mireur, seconded by Watson, and carried—proposal of the Corpus Christi Church Press and Weekly News, Frank B. Harrison, publisher, to publish all ordinances, calls for election, etc., at 6 cents per line, designating said paper as the official publication for the City, was accepted subject to the resolution and contract to be drawn by the city attorney."

It does not appear that a formal resolution or contract was drawn by the city attorney. The City did, however, actually use Mr. Harrison's paper for the publication of its ordinances and notices. The fact that the City Council proceeded informally with these publications, without a formal resolution or contract, did not prevent the paper's being the "official paper" as that term is used in Article 1013. Neither did the fact that the City Council failed to formally direct the publication of the ordinance or map in the issue of September 3, 1937, render that publication ineffective. Article 1013 simply provides that "Every ordinance imposing any penalty, fine or forfeiture shall, after the passage thereof, be published in every issue of the official paper for ten days. If the official paper be published weekly, the publication shall be made in one issue thereof." We hold that the publication of September 3, 1937, complied with the provisions of Article 1013. We are not here concerned with rights asserted under an informal or irregular municipal contract, but only with the effect and validity of an actual publication of an ordinance.

Appellees present the further contention that, even though the Zoning Ordinance be valid in its general aspects and legally adopted by proper procedure, the particular restriction forbidding the location of ice manufacturing and cold storage plants in "Commercial Districts" is unenforcible and void as it is arbitrary, unrea-

sonable and discriminatory as to such plants and appellees' property.

The Corpus Christi ordinance divides the City into six zones, or use districts, termed respectively: dwelling district, apartment district, retail district, commercial district, commercial camp trailer district and manufacturing district. The particular district involved here is the commercial district.

Sections 6, 7 and 8 of the Ordinance read as follows:

"Section 6. *Commercial District*. In a Commercial District no building or premises shall be used, and no building shall be erected or structurally altered which is arranged or designed to be used for other than one or more of the following uses:

"(1) A use permitted in a Dwelling District, an Apartment District or a Retail District.

"(2) Commercial Amusement Park, Skating Rink, Dance Hall.

"(3) Wholesale Sales Office, Sample Room, Tourist Camp, Public Garage, Mortuary, Pressing, Dry Cleaning, Laundry or Dyeing Establishment, Bottling Works, Ice Cream Manufacturers, Creamery, Bakery.

"(4) Penal or Correctional Institution, Institution for the care of Tubercular, Liquor, Narcotic, Insane or Feeble Minded Patients.

"(5) Electro-plating, Galvanizing.

"(6) Job Printing, Newspaper printing.

"(7) Private Stable.

"(8) Oil compounding or barrelling, Street car barn, Freight terminal, Loading or storage tracks, Storage in bulk of, or warehouse for, such material as asphalt, brick, cement, contractor's equipment, clothing, coal, cotton, dry goods, drugs, films, furniture, feed fertilizer, grain, gasoline, gravel, glass, grease, groceries, hay, ice, hardware, iron, lead, lime, lumber, machinery, millinery, oil, paint, plaster, pipe, roofing, rope, rubber, sand, shell and shell pits, shop supplies, stone, tar, tarred or creosoted products, terra cotta, timber, tobacco, turpentine, varnish, wood or wool, provided this shall not include the storage in bulk of junk or second-hand materials.

"(9) Manufacture of any kind not listed in section 7, paragraphs 2 to 11, inclusive, provided mechanical power not in excess of 5 H. P. is employed in the operation of any one machine, and further provided that such use is not noxious or offensive by reason of the emission of smoke, dust, odor, gas, fumes, noise, or vibration.

"(10) Railway Passenger Station or Right of Way, not including railway yards.

"(11) Accessory buildings, including one private garage as an accessory use when located not less than 60 feet back from the front lot line, not less than 4 feet back from the rear lot line, and not less than 20 feet back from any side street line, nor less than 4 feet back from any side lot line not on a side street."

"Section 7. *Manufacturing District*. In a Manufacturing District no building or premises shall be used, and no building shall be erected or structurally altered which is arranged or designed to be used, for other than one or more of the following uses:

"(1) A use permitted in a Dwelling District, an Apartment District, a Retail District or a Commercial District.

"(2) Textile Manufacture.

"(3) Ice Manufacture, Cold Storage Plant, Carpet Cleaning.

"(4) Storage or packing of Live Poultry, Fish or Poultry Dressing, or Poultry Killing.

"(5) Canning or preserving Factory, Cotton Ginning and Baling, Cotton Seed Products Manufacture, Flour Milling, Grain Elevator, Cotton Compress.

"(6) Blacksmith, Horseshoeing or Wagon Shop, Public Stable, Veterinary Hospital.

"(7) Disinfectant or Insecticide Manufacture, Tar Roofing or Tar Waterproofing Manufacture, Wood Distillation including Manufacture of Charcoal, Tar, Turpentine and other By-products, Dyes Manufacture, Printing Ink Manufacture.

"(8) Coal Hoist, Coal Pocket or Coal Car Trestle.

"(9) Scrap Iron or Junk Storage, Scrap Paper or Rag Storage or Baling, Automobile Wrecking Yard.

"(10) Central Station Lighting or Power Plant, Railroad Roundhouse or Shop.

"(11) Stone Cutting, Stone Quarry, Rock Crushing.

"(12) Boiler Making Structural Iron or Pipe Works.

"(13) Any manufacturing or Industrial Process not heretofore listed, excluding, however, such Process as may emit obnoxious dust, fumes, odor or gas."

Under the ordinance a conforming use is such use of property as is permitted by

the classification applicable to each particular zone or area provided for by the ordinance.

"Section 8. *Non-Conforming Uses:*

"(1) Any use of property existing at the time of the passage of this Ordinance which does not conform to the regulations prescribed in the preceding sections of this Ordinance shall be deemed a Non-Conforming Use.

"(2) A Non-Conforming Use may be continued subject to such regulations as to the maintenance of premises and conditions of operation as may in the judgment of the Board of Adjustment be reasonably required for the protection of adjacent property.

"(3) A Non-Conforming Use shall not be extended, but the extension of a use to any portion of a building which position was arranged or designed for such Non-Conforming Use at the time of the passage of this Ordinance shall not be deemed the extension of a Non-Conforming Use.

"(4) A Non-Conforming Use shall not be changed unless changed to a conforming use. A Non-Conforming Use if changed to a conforming use may not thereafter be changed back to any Non-Conforming Use.

"(5) A cemetery, sewage disposal or treatment plant, public utility plant, hospital, sanitarium, correctional institution or municipal or state building or institution existing in any use district at the time of the passage of this Ordinance, or any Manufacturing District use so existing in a commercial district, shall be deemed a conforming use upon the plot devoted to such use at the time of the passage of this Ordinance.

"(6) A Non-Conforming Use, destroyed by fire or other calamity may be rebuilt, provided the area and height of the building is not increased."

The use classification of the Corpus Christi Ordinance differs from the Dallas Ordinance (involved in the Lombardo case) in that only one manufacturing district is provided for by the Corpus Christi Ordinance, while the Dallas Ordinance contains provisions for first and second manufacturing districts. Under the Dallas Ordinance the operation of an ice manufacture and cold storage plant is permitted in a commercial district, while under the Corpus Christi Ordinance the operation of such industry is restricted to the manufacturing district.

Appellees contend that the Corpus Christi Ordinance as applied to their property is unreasonable and discriminatory and therefore unenforcible because:

1. The ordinance designates the block occupied by the Central Power & Light Company a public utility which also manufactures and sells ice, as a "manufacturing district." The block is surrounded by a "commercial District" and the effect of such designation is to give to said Central Power and Light Company an unreasonable advantage over other ice manufacturers in the City, in that the manufacturing of ice being permissive in a manufacturing district the plant could be enlarged without limitation, insofar as the ordinance was concerned, while other ice plants in existence at the time of the passage of the ordinance were situated either in commercial or apartment districts and therefore constituted non-conforming uses.

2. The particular locality in which appellees' plant is located is devoted to semi-industrial uses such as repair and storage garages, welding and blacksmith shops, junk yards, lumber yards and furniture repair shops, and the restriction against ice manufacturing in such location bears no reasonable relationship to the purposes sought to be realized by the Zoning Enabling Act or the ordinance passed thereunder, i. e., the promotion of the public health, safety, morals, and general welfare.

3. Ice cream manufacturing plants and creameries using the same or similar refrigerants and processes as ice manufacturing plants are permissive uses in Commercial Districts, while ice manufacturing plants are excluded.

4. It is necessary that an ice manufacturing plant in order to be successful financially, be located where it is accessible to the public. Appellees' business was manufacturing ice and selling it wholesale and retail at the company's platform, and such a business can not be successfully operated in the manufacturing district designated by the ordinance.

Copies of the Zoning Map in the record show that the larger part of the commercial district is located to the north of appellees' plant. It is irregular in shape and a large part thereof extends north and south about twenty-three city blocks along the bay front of Corpus Christi Bay. The

District is about thirteen blocks wide at a point eight blocks north of appellees' plant.

Appellees' plant is approximately four blocks south of the Texas Mexican Railway Company's track. Immediately north of the track is a manufacturing district about seven blocks long and two blocks wide. To the south is a commercial district about two and one-half blocks wide, paralleling the track. South Staples Street roughly parallels the bay front and is situated about seven blocks inland at the point where appellees' plant is located.

The Commercial District, as outlined on the map, runs south along Staples Street from the south boundary of the Commercial District, situated south of the Tex-Mex tracks to a point about seven blocks south of appellees' plant. This zone takes in one-half of each of the blocks fronting on Staples Street. To the east of this zone toward the bay is an apartment district, while to the west there are situated apartment and dwelling districts.

The block in which appellees' plant is located contains a filling station, two residences, a cleaning and pressing establishment, a bakery, a radio shop, a confectionary shop and a cash and carry grocery store. In this block are also located two non-conforming uses, a small welding shop and a small blacksmith shop.

Across the street is located a repair garage, two private residences and a small lumber yard. South Staples Street, north of appellees' plant to the Texas-Mexican Railroad tracks, is occupied principally by retail establishments and a few non-conforming uses.

The property of the Central Power & Light Company is located six blocks north and seven blocks east of appellees' plant. At the time of the passage of the ordinance, there were four other ice plants located in Corpus Christi. Three of these, including one used to supply a hotel, are by the ordinance made non-conforming uses in the commercial district. The fourth is a non-conforming use in an apartment district. The nearest of these plants is approximately five blocks from appellees' location.

As above pointed out, the zoning ordinance permitted creameries and ice cream manufacturing companies to operate in Commercial Districts and the record shows that at least three of such plants are in actual operation.

■ It is well settled in this State as well as the other States of the Union, that the prohibition of certain industries or businesses in particular localities by means of a comprehensive zoning ordinance, carrying into effect a program of city planning, is a legitimate exercise of the police power.

■ In the well considered case of Women's Kansas City St. Andrew Society v. Kansas City, Missouri, 58 F.2d 593, 598, Mr. Justice Kenyon, speaking for the Circuit Court of Appeals, Eighth Circuit, discusses numerous authorities and sets forth the following rules applicable to the validity of zoning ordinances, viz.:

"Zoning laws rest upon the police power of the states, and, when they are fairly within the well-recognized bounds of such power they are valid, even though they may entail some hardship upon property owners.

■ "While such police power is broad, there are limitations to its exercise, which the courts have not attempted to accurately define. However, restrictions by zoning ordinances imposed upon the use of one's property to be valid must bear some 'substantial relationship to the public health, safety, morals or general welfare.' The reserved police power of the state must stop when it encroaches on the protection accorded the citizen by the Federal Constitution. Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643, 3 Ann.Cas. 765; Thomas Cusack Company v. City of Chicago et al., 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472, L.R.A.1918A, 136, Ann.Cas. 1917C, 594; Pennsylvania Coal Company v. Mahon et al., 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322, 28 A.L.R. 1321; Village of Euclid et al. v. Ambler Realty Company, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; Nectow v. City of Cambridge et al., 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842; Oklahoma City, Oklahoma et al. v. Dolese et al. [10 Cir.], 48 F.2d 734.

■ "Private property cannot, under the guise of police power, be subjected to unreasonable annoyance and arbitrary restriction of its use where public welfare can in no way receive benefit by such restriction. Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149, L.R.A.1918C, 210, Ann.Cas.1918A, 1201; Louis K. Liggett Company v. Baldridge, Attorney General of Pennsylvania, et al., 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204; Village of Ter-

race Park et al. v. Errett [6 Cir.], 12 F.2d 240; Anderson et al. v. Jester et al., 206 Iowa 452, 221 N.W. 354.

"Where the legally constituted body, to determine and establish zoning ordinances, has acted within the scope of the police power, courts will not substitute their judgment as to the wisdom or propriety of said action for that of such body. Its discretion is not for review by the courts. Zahn et al. v. Board of Public Works et al., 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074; Nectow v. City of Cambridge et al., 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842; Standard Oil Company et al. v. City of Marysville et al., 279 U.S. 582, 49 S.Ct. 430, 73 L.Ed. 856; American Wood Products Co. v. City of Minneapolis et al., [8 Cir.], 35 F.2d 657; Marx et al. v. Maybury, Director of Licenses of Washington, et al. (D.C.) 36 F.2d 397; Marblehead Land Co. et al. v. City of Los Angeles [9 Cir.], 47 F.2d 528.

"If the question is fairly debatable as to whether the zoning ordinance is arbitrary and unreasonable and has no substantial relation to public health, safety, morals, or general welfare, the court will not interfere. Radice v. People of State of New York, 264 U.S. 292, 44 S.Ct. 325, 68 L.Ed. 690; Village of Euclid et al. v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; Zahn et al. v. Board of Public Works et al., 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074; Marblehead Land Co. et al. v. City of Los Angeles, [9 Cir.], 47 F.2d 528.

"A zoning ordinance may be valid in its general aspects, and yet as to a particular state of facts involving a particular owner affected thereby may be as to such owner so clearly arbitrary and unreasonable as to be unenforceable. Village of University Heights et al. v. Cleveland Jewish Orphans' Home [6 Cir.], 20 F.2d 743 [54 A.L.R. 1008]; Jones et al. v. City of Los Angeles et al., 211 Cal. 304, 295 P. 14."

In the case of Miller v. Board of Public Works, 195 Cal. 477, 234 P. 381, 384, 38 A.L.R. 1479, the Supreme Court of California had under consideration a zoning ordinance passed under an enabling act similar to Texas law. In that case it was pointed out that "the police power, as evidenced by comprehensive zoning ordinances, has a much wider scope than the mere suppression of the offensive uses of property * * *, and that it acts, not only negatively, but constructively and affirmatively, for the promotion of the public welfare." This case also sets forth two tests for determining the validity of a zoning restriction: "(1) Is the scheme of zoning as a whole sound; that is to say, is the method of classification and districting reasonably necessary to the public health, safety, morals, or general welfare? and (2) has the scheme of classification and districting been applied fairly and impartially in each instance?"

The ordinance involved in the California case restricted a certain residential district to one and two-family residences. The validity of this restriction was upheld. The court said:

"Somewhere the line of demarcation must be drawn, and it is primarily the province of the municipal body to which the zoning function is committed to draw that line of demarcation, and it is neither the province nor the duty of courts to interfere with the discretion with which such bodies are invested in the absence of a clear showing of an abuse of that discretion. In short, as previously indicated, we are not permitted to substitute our judgment for the legislative judgment. Brown v. Los Angeles, supra [183 Cal. 783, 192 P. 716]."

In applying the rules above set out to the particular facts of this case, it will be noted that the Corpus Christi ordinance embodies a comprehensive scheme of city zoning. The general plan adopted was approved as to legality in the case of Lombardo v. City of Dallas, supra. It must be conceded that this ordinance and the Zoning Enabling Act vest in the City Council an extensive discretionary power to act upon recommendations of the zoning commission provided for in the Act. By providing for a Board of Adjustment in the Zoning Enabling Act (Article 1011g) the Legislature sought to provide proper governmental machinery for the correction of inequities or inequalities caused by the application of a zoning ordinance to particular localities or properties. It must further be conceded that the distribution of governmental powers to the bodies provided for in the Act is well calculated to create and enforce a zoning ordinance and accomplish the purpose of zoning legislation. A zoning commission, under the Act, for instance, is an appropriate body to determine a policy of city planning, and when its recommendation is approved and enacted into law by an or-

dinance of the City Council, it can only be set aside upon a showing of clear abuse of discretion. If reasonable minds differ as to whether or not a particular restriction has a substantial relationship to the public health, safety, morals or general welfare, the restriction must stand as a valid exercise of the police power.

The test of reasonableness as defined by the authorities above discussed must be applied to the ordinance, or any particular part thereof, as of the time the ordinance was adopted, taking into consideration the physical facts then existing. At the time of the passage of the Corpus Christi ordinance appellees had not purchased the tract of land upon which they subsequently erected their plant. The plant of the Central Power & Light Company— a public utility producing power and electricity as well as ice—was in existence. The City Council, under the Zoning Enabling Act, could not have required the destruction or removal of this plant. Article 1011c. Appellees' complaint comes down to the contention that this plant should have been classified as a non-conforming use in a commercial district, rather than a permissive use in a manufacturing district. In our opinion the classification of this property lay within the discretion of the City Council, and the evidence does not support a finding that its discretion was abused in this particular.

As above pointed out, the record shows that the commercial district, as defined by the Zoning Ordinance, contains a number of non-conforming uses. The power to zone necessarily includes the power to plan for the future. It is a prospective power, and the City Council and Zoning Commission are not required to permit an offensive industry to operate in a particular district because of the fact that one such industry was operating there before the passage of the ordinance, and continues thereafter as a non-conforming use. We are here dealing with a comprehensive zoning plan. The need for such a plan is apparent from the record. We can not say that the City Council abused its discretion in making its Commercial Zone classification and including therein a portion of the blocks fronting on Staples Street, where appellees' plant is located, although it is conceded that non-conforming uses are located in the zone and on the street. These uses are not so numerous as to make unreasonable an expectation that the zone and street would develop in a business and industrial way in substantial conformity with the plan adopted for the commercial district.

It is also our opinion that a reasonable distinction may be drawn between ice manufacturing and cold storage plants, on one hand, and ice cream manufacturing and creameries, on the other. Although both types of manufacturing plants may use the same freezing processes and be similar in various respects, there are substantial differences between the two. It appears that ice manufacturing by reason of the processes used, the size of machinery and engines generally employed, because of the bulky nature of the product, and the transportation problem involved, makes the presence of such an industry objectionable in certain localities and vicinities. It follows that their exclusion may be accomplished by a legitimate exercise of the police power. Lipsitz v. Parr, 164 Md. 222, 164 A. 743. The manufacturing of ice cream does not tend to the development of large plants and heavy machinery to the same extent as ice manufacturing. One might properly be classified as a light industry and the other as a heavy industry. The City Council did not abuse its discretionary powers in making the distinction complained of, by placing ice cream manufactories in Commercial Districts and Ice Plants in Manufacturing Districts.

It may be further pointed out that if it be conceded that there is no legitimate distinction for zoning purposes between ice plants and ice cream manufacturing, it does not necessarily follow that the restriction against ice manufacturing in commercial districts is invalid. It is as reasonable to say that the zoning authority was mistaken in permitting the operation of ice cream manufacturing plants and creameries in commercial districts as it is to say that ice plants were erroneously excluded therefrom. Appellees in order to invalidate the restriction upon the particular ground urged must show that because of the terms of the classification involved and the location of certain businesses, shops or industries within the Zone or in the vicinity of appellees' plant, it is wholly unreasonable to expect that the purpose of the City Council in making the Commercial District classification can be realized—in other words, that the restriction against the operation of ice manufacturing plants bears no substantial relationship to the public health, safety or general welfare of the community. A

showing that three or four ice cream manufacturing plants or creameries are located in the large commercial district of Corpus Christi, even as permissive or conforming uses, is insufficient for that purpose. ·

This case does not present a fact situation comparable to those discussed in City of Amarillo v. Stapf, Tex.Civ.App., 109 S. W.2d 258; City of West University Place v. Ellis, Tex.Civ.App., 118 S.W.2d 907; Id., 134 Tex. 222, 134 S.W.2d 1038; or Pacific Palisades Association v. City of Huntington Beach, 196 Cal. 211, 237 P. 538, 40 A.L.R. 782.

■■■■ There is no merit in the contention that the restriction against ice manufacturing in commercial districts is arbitrary and unenforcible, because such a business would be more profitable located in such a district and consequently more accessible to the public. It may be that ice plants already in existence at the time the zoning ordinance was passed would possess a certain commercial advantage over ice plants afterwards located in the manufacturing district, as designated by the zoning ordinance. Similar situations necessarily result when a zoning ordinance is applied to a partially developed industrial city. This does not, however, deprive the city of the power to pass a restrictive city ordinance, nor does the fact that the property upon which appellees' plant is located would be more valuable for ice manufacturing purposes than for a use permitted in a commercial zone, render the restriction invalid. In the case of Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 145, 60 L. Ed. 348, Ann.Cas.1917B, 927, the Supreme Court of the United States, in discussing zoning restrictions adopted under the police power, said: "It is to be remembered that we are dealing with one of the most essential powers of government,—one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily. A vested interest cannot be asserted against it because of conditions once obtaining. Chicago & A. R. Co. v. Tranbarger, 238 U.S. 67, 78, 35 S.Ct. 678, 59 L.Ed. 1204, 1211. To so hold would preclude development and fix a city forever in its primitive conditions. There must be progress, and if in its march private interests are in the way, they must yield to the good of the community. The logical result of petitioner's contention would seem to be that a city could not be formed or enlarged against the resistance of an occupant of the ground, and that if it grows at all it can only grow as the environment of the occupations that are usually banished to the purlieus."

To the same effect is the case of Lombardo v. City of Dallas, Tex.Civ.App., 47 S. W.2d 495, 499, wherein it was said: "It is not an effective argument against a zoning ordinance, otherwise valid, that it limits the use and depreciates the value of property, as the public health, safety, morals, and the general welfare are superior in importance to the pecuniary profits of the individual owner. The particular provision of the ordinance attacked must itself be clearly arbitrary, unreasonable and without any substantial relation to the public health, safety, morals, or general welfare, before it could be. held unconstitutional and void. This doctrine seems to be thoroughly well established. See Appeal òf Kerr, 294 Pa. 246, 144 A. 81, 83, and authorities cited; Heffernan v. Zoning Board, 50 R.I. 26, 144 A. 674, 675; Wulfsohn v. Burden, 241 N. Y. 288, 150 N.E. 120, 43 A.L.R. [651] 660; Spector v. Building Inspector, 250 Mass. 63, 145 N.E. 265, 267; [Village of] Euclid v. Ambler [Realty Co.], 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. [1016] 1026; Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348, Ann.Cas.1917B, 927; Neithamer v. Heyer, 39 Ohio App. 532, 177 N.E. 925."

In affirming the judgment of .the Court of Civil Appeals in the Lombardo case, 124 Tex. 1, 73 S.W.2d 475, 478, Chief Justice Cureton said: "All property is held subject to the valid exercise of the police power; nor are regulations unconstitutional merely because they operate as a restraint upon private rights of person or property or will result in loss to individuals. The infliction of such loss is not a deprivation of property without due process of law; the exertion of the police power upon subjects lying within its scope, in a proper and lawful manner, is due process of law."

■■■ We have concluded from a careful examination of the record that the evidence is insufficient to show that in the matters complained of, the City Council or Zoning Commission of Corpus Christi abused the discretion vested in them by law. We therefore· hold that the Zoning Ordinance in question, and the provisions thereof applicable to appellees and their property are not subject to the· objections here urged

against them, but are valid and binding regulations. Other than the cases cited above, the following authorities in our opinion support the conclusions herein announced: Village of Euclid v. Ambler Realty Company, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; Chicago Burlington & Quincy Ry. Co. v. Illinois ex rel. Drainage Commissioners, 200 U.S. 561, 26 S.Ct. 341, 50 L.Ed. 596, 4 Ann.Cas. 1175; Connor v. City of University Park, Tex.Civ.App., 142 S.W.2d 706, writ refused; Luse v. City of Dallas, Tex.Civ.App., 131 S.W.2d 1079, writ refused; State of Louisiana ex rel. Joseph Civello v. City of New Orleans, 154 La. 271, 97 So. 440, 33 A.L.R. 260; 9 Tex.Jur. 466; 11 Am.Jur. 1087; 3 McQuillin, Municipal Corporations, 2d Ed., 325; Smith v. Collison, 119 Cal.App. 180, 6 P.2d 277; City of Aurora v. Burns, 319 Ill. 84, 149 N.E. 784; Fox Meadow Estates v. Culley, 261 N.Y. 506, 185 N.E. 714; American Wood Products Co. v. Minneapolis, 8 Cir., 35 F.2d 657.

 The City of Corpus Christi, in its brief, contends that in the event we hold the ordinance in question valid as applied to appellees' property (and we have so held), then an injunction should issue from this Court restraining appellees from further operation of their plant in violation of the ordinance, in accordance with the prayer of the cross-action filed in the court below. In our opinion the City is entitled to proceed by way of injunction to prevent further violation of its ordinance, under the provisions of Article 1011h, Vernon's Ann.Tex.Civ.Statutes. The terms and details of such an injunction should be in accordance with equitable principles, so as to cause no more financial loss than necessarily must result from an effective enforcement of the ordinance under the facts and circumstances of the situation now existing. The trial court is the proper and suitable tribunal for the granting of such relief.

The judgment of the trial court will be reversed, and judgment here rendered vacating the injunction restraining the City, its officials, agents and employees from enforcing the Zoning Ordinance in question. That part of the case relating to the City's application for injunctive relief will be remanded to the trial court for further proceedings in conformity with this opinion.

Reversed and rendered in part, reversed and remanded in part.