OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



May 22, 2000

The Honorable Ben W. "Bud" Childers
Fort Bend County Attorney
301 Jackson, Suite 621
Richmond, Texas 77469-3108

Opinion No. JC-0223

Re: What constitutes a "newspaper of general circulation" for the purpose of publishing legal notices, and related questions (RQ-0160-JC)

Dear Mr. Childers:

Numerous statutes require a governmental entity to publish notice of an upcoming event or a proposed action in a "newspaper of general circulation." *See, e.g.,* TEX. GOV'T CODE ANN. § 2007.042(a) (Vernon 2000) (requiring political subdivision that proposes to affect private real-property rights to publish notice); TEX. LOC. GOV'T CODE ANN. § 272.001(a) (Vernon Supp. 2000) (requiring political subdivision to publish offer of land owned by subdivision for sale); TEX. WATER CODE ANN. § 11.175(b) (Vernon Supp. 2000) (requiring Texas Natural Resource Conservation Commission to publish notice of hearing to cancel water-appropriation permit). You ask generally how the phrase "a newspaper of general circulation" is defined with reference to notices a governmental entity, including a county, is required to publish. *See* Letter from Honorable Ben W. "Bud" Childers, Fort Bend County Attorney, to Honorable John Cornyn, Attorney General of Texas (Dec. 13, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. You specifically ask seven questions:

> 1. What constitutes a "newspaper of general circulation" as that phrase is used in the requirements for publication of legal notices?
>
> 2. Is there an objective standard to determine whether a newspaper is one of general circulation in a given county?
>
> 3. In a county with a population of approximately 325,000, is a weekly newspaper that meets the requirements of Texas Government Code § 2051.044 and that has a subscriber base of approximately 200, a newspaper of general circulation?
>
> 4. In determining whether to award the contract for publication of legal notices to Newspaper "A," is it permissible to consider the circulation numbers of Newspaper "B," even though Newspaper "B" would not in and of itself qualify for the award of the contract

> (because Newspaper "B" is not entered as a Periodicals postal matter in Fort Bend County, Texas)?
>
> 5.  Is it permissible for Commissioners Court to set the minimum number of subscribers a newspaper must have in the bid specifications?
>
> 6.  Is it permissible for Commissioners Court to base its lowest and best bid criteria on the cost per unit or subscriber rather than the price per column inch?
>
> 7.  Since there are both special and general statutes, each requiring a different standard for publication, may Commissioners Court require that the newspaper be one of general circulation when it determines its bid specifications?

Request Letter, *supra*, at 2.

We conclude generally that a newspaper of general circulation is a newspaper that has more than a de minimis number of subscribers within a specific geographic region, has a diverse subscribership, and publishes some items of general interest to the community. We also conclude that a county commissioners court generally may specify, in a request for bids, the minimum number of subscribers a newspaper bidding on a contract to publish county notices must have if the specification relates to the quality of the goods or services the county desires to purchase. And we conclude that a county must "base its lowest and best bid criteria" on the newspaper's lowest published rate for classified advertising.

The Fort Bend County Purchasing Department recently solicited bids for a term contract for newspaper publication of legal notices in Fort Bend County. *See* Request Letter, *supra*, at 1. In response, the county has received a bid from a newspaper with paid subscribers that has a sister publication, produced by the same publisher, that is distributed free of charge:

> One of the bidding newspapers (Newspaper "A")[] is a local weekly newspaper that has a circulation of approximately 200 paid and/or requested mail subscriptions. Slightly less than half of these 200 subscriptions are paid/requested outside-county mail subscriptions with the remainder being paid in-county subscriptions. Newspaper "A" devotes more than 25 percent of its total column lineage to general interest items and has been published regularly and continuously at least once each week for a number of years. Additionally, Newspaper "A" is entered as a second-class postal matter (or "Periodicals" as the U.S. Postal Service now refers to it) in Fort Bend County, Texas.

The publisher of Newspaper "A" also publishes another weekly newspaper (Newspaper "B"). Newspaper "B" is a local weekly that has a press run of approximately 56,000 newspapers and is distributed free to homes and businesses in Fort Bend County. Like Newspaper "A", Newspaper "B" devotes more than 25 percent of its total column lineage to general interest items and has been published regularly and continuously at least once each week for a number of years. However, Newspaper "B" is not entered as a Periodicals postal matter in Fort Bend County, Texas.

It has been proposed that, if the contract for publication of legal notices is awarded to Newspaper "A", then Newspaper "B" will also print the legal notices in its newspaper at no additional charge to the county. Newspaper "B" cannot in and of itself be awarded the contract since it is not entered as a Periodicals postal matter and as such does not meet the requirements of Texas Government Code § 2051.044.

Request Letter, *supra*, at 1-2.

You first ask what constitutes a newspaper of general circulation for the purpose of numerous statutes that require a governmental entity, including a county, to publish notice of a public hearing, a request for proposals, or other announcement in "a newspaper of general circulation." *See* Request Letter, *supra*, at 2. For example, neither a county nor a municipality may issue bonds that are to be paid from ad valorem tax revenues unless the issuance has been approved in an election following the publication of notice in a newspaper of general circulation "published in the county or municipality holding the election." TEX. GOV'T CODE ANN. § 1251.003(d)(2) (Vernon 2000); *see also* TEX. ELEC. CODE ANN. § 4.003(a)(1)(B) (Vernon Supp. 2000). And a county generally may not sell or exchange its real property unless it has notified the general public of the offer of the land for sale or exchange, "published in a newspaper of general circulation in either the county in which the land is located or, if there is no such newspaper, in an adjoining county." *See* TEX. LOC. GOV'T CODE ANN. § 272.001(a) (Vernon Supp. 2000); *see also, e.g.,* TEX. ALCO. BEV. CODE ANN. § 11.392(b) (Vernon Supp. 2000) (requiring applicant for a private club permit renewal to publish notice of renewal application in "newspaper of general circulation"); TEX. LOC. GOV'T CODE ANN. § 54.035(b) (Vernon 1999) (requiring municipal building and standards commission to publish notice of proceedings before commission in "newspaper of general circulation" in municipality); TEX. TRANSP. CODE ANN. § 314.022(d) (Vernon 1999) (requiring municipal condemnation commission to publish notice of condemnation hearing "in a newspaper of general circulation in the county in which the property is located").

As commonly defined, *see* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998) (directing that statutory words and phrases generally should be construed consistently with common usage or

accepted meaning), the phrase "newspaper of general circulation" describes a newspaper that has more than a de minimis number of subscribers, has a diverse audience, and contains some news of general interest to the community. *See generally* 66 C.J.S. *Newspapers* § 4 (1998). After studying the decisions available to it, the Iowa Supreme Court, in a case cited by a Texas court of appeals, devised two criteria for considering whether a newspaper is one of "general circulation": "First, . . . a newspaper of general circulation is not determined by the number of its subscribers, but by the diversity of its subscribers. Second, . . . even though a newspaper is of particular interest to a particular class of persons, yet, if it contains news of a general character and interest to the community, although the news may be limited in amount, it qualifies as a newspaper of 'general circulation.'" *Burak v. Ditson*, 229 N.W. 227, 228 (Iowa 1930) (cited in *City of Corpus Christi v. Jones*, 144 S.W.2d 388, 393 (Tex. Civ. App.–San Antonio 1940, writ dism'd judgm't cor.)). The Supreme Court of North Carolina examined cases from several jurisdictions and devised a similar four-pronged test:

> First, it must have a content that appeals to the public generally. Second, it must have more than a de minimis number of actual paid subscribers in the taxing unit. Third, its paid subscriber distribution must not be entirely limited geographically to one community, or section, of the taxing unit. Fourth, it must be available to anyone in the taxing unit who wishes to subscribe to it.

*Great S. Media, Inc. v. McDowell County*, 284 S.E.2d 457, 467 (N.C. 1981); *see* Ala. Att'y Gen. Op. No. 28 (1997), 1997 WL 1054022, *1 (discussing *Great Southern Media*'s four-pronged test). Thus, a newspaper of general circulation "circulates among all classes and is not confined to a particular class or calling in the community" and includes some general-interest items, so that the newspaper is one upon which the general public will rely "to be informed of the news and intelligence of the day, editorial opinion, and advertisements." 66 C.J.S. *Newspapers* § 4, at 19-20 (1998).

We believe a Texas court would analyze the issue using criteria similar to those adopted in the Iowa and North Carolina cases. First, more than a de minimis number of subscribers within the bounds of a certain geographic region, *see Great S. Media, Inc.*, 284 S.E.2d at 467, is necessary to serve the common-sense purpose of notifying people within the region. *See* Dale R. Agthe, Annotation, *What Constitutes Newspaper of "General Circulation" Within Meaning of State Statutes Requiring Publication of Official Notices and the Like in Such Newspaper*, 24 A.L.R. 4th 825 (1983) (stating that "primary purpose of the printing of legal notices is to give the widest publicity practicable"). Second, the Court of Civil Appeals has underlined the importance of the diversity of a newspaper's readership: it determined that a daily paper in the City of Dallas with a circulation of about 1,000 "in the different walks of life" was a newspaper of general circulation. *Robinson v. State*, 143 S.W.2d 629, 633 (Tex. Civ. App.–Dallas 1940, writ dism'd judgm't cor.). Third, in *City of Corpus Christi v. Jones* the court relied upon the general contents of a newspaper in determining that it was a newspaper of general circulation. *See City of Corpus Christi*, 144 S.W.2d at 393. The court noted the following characteristics: "[I]t had a circulation of about 4000 in a city of about 45,000 population; . . . about 1200 copies were delivered to paid subscribers, and

although it featured church and Corpus Christi news, it was not dedicated to any private enterprise. ... The paper contained news items of general interest, editorials and advertisements." *Id.*; *cf. Meyer v. Opperman*, 13 S.W. 174, 176 (Tex. 1890) (finding, in action on deed of trust, that Galveston Civilian may, as matter of law, be a newspaper sufficient for notice despite its limited circulation); *Hurt v. Cooper*, 63 Tex. 362, 367 (1885) (same).

We accordingly conclude that, to be a newspaper of general circulation, a newspaper must have more than a de minimis number of subscribers within a particular geographic region; must have a diverse subscribership; and must contain some news, editorials, and advertisements of a general character and interest to the community. *See Burak*, 229 N.W. at 228; *Moore v. Alaska*, 553 P.2d 8, 21 (Alaska 1976). Whether a particular newspaper is a newspaper of general circulation is a question of fact that cannot be determined in the opinion process. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0032 (1999) at 4 (stating that question of fact is beyond purview of this office); JC-0027 (1999) at 3 (stating the questions of fact cannot be addressed in attorney general opinion); JC-0020 (1999) at 2 (stating that investigation and resolution of fact questions cannot be done in opinion process).

Section 2051.044 of the Government Code is relevant to determine whether a particular publication is a newspaper in which a governmental entity may publish notice. Section 2051.044 lists four criteria of a newspaper in which a notice must be published:

The newspaper in which a notice is published must:

(1) devote not less than 25 percent of its total column lineage to general interest items;

(2) be published at least once each week;

(3) be entered as second-class postal matter in the county where published; and

(4) have been published regularly and continuously for at least 12 months before the governmental entity or representative publishes notice.

TEX. GOV'T CODE ANN. § 2051.044(a) (Vernon 2000).

A brief received in connection with your request suggests that a newspaper that has obtained Periodical mailing privileges (f/k/a "second-class postal matter," *see id.* § 2051.044(a)(3); *see also* UNITED STATES POSTAL SERVICE, DOMESTIC MAIL MANUAL, Issue 55, reg. E211.1.0 (4/6/00) [hereinafter "Domestic Mail Manual"] ("Effective July 1, 1996, second-class mail was renamed Periodicals.")), and therefore satisfies section 2051.044(a)(3) of the Government Code, should be presumed to be a newspaper of general circulation. *See* Brief from Don R. Richards, McWhorter, Cobb & Johnson, L.L.P., Attorneys at Law, on behalf of Texas Press Ass'n, to Honorable John

Cornyn, Attorney General (Jan. 24, 2000) (on file with Opinion Committee) [hereinafter "TPA Brief"]. According to the TPA Brief, the holder of Periodical mailing privileges must produce a "general publication" that is "'published to disseminate information of a public character' or is otherwise devoted to matters of social public concern such as 'literature, the sciences, art or some special industry.'" *Id.* at 4 (quoting Domestic Mail Manual, *supra*, reg. E212.1.2). The TPA Brief asserts that the holder of Periodical mailing privileges also must devote at least twenty-five percent of the publication's overall content to noncommercial, "news-type matters of general public interest." *Id.*; *cf.* TEX. GOV'T CODE ANN. § 2051.044(a)(1) (Vernon 2000) (defining "newspaper" as publication that, among other things, devotes at least twenty-five percent of total column lineage to general interest items).

Even assuming that the TPA Brief properly characterizes United States Postal Service regulations, the holder of Periodical mailing privileges is not entitled to a presumption that the holder publishes a newspaper of general circulation. An analysis of whether a newspaper is one of general circulation requires not only an examination of the newspaper's content, but also a determination that the newspaper's subscribership is more than de minimis and is diverse. It does not appear that obtaining Periodical mailing privileges requires a consideration of these factors.

Nor is a newspaper, as defined in section 2051.044 of the Government Code, necessarily a newspaper of general circulation. *See* TEX. GOV'T CODE ANN. § 2051.044(a) (Vernon 2000). Nothing in section 2051.044(a)'s definition requires an examination of the diversity of a newspaper's subscribership or a determination that the newspaper serves more than a minimal number of subscribers. Consequently, a newspaper, as defined in section 2051.044(a), is a newspaper of general circulation only if it has more than a de minimis number of subscribers and its subscribership is diverse.

Conversely, a newspaper of general circulation must be a newspaper for the purposes of section 2051.044, in addition to having more than a de minimis number of subscribers and a diverse subscribership. To the extent a general or special law does not specify a contrary "manner of publication," section 2051.044, as part of chapter 2051, subchapter C, governs the publication of a notice in a newspaper by a governmental entity. *See id.*

In response to your second question, whether there is an objective standard that may be used to determine whether a newspaper is one of general circulation, we conclude there is not. Whether a particular publication is a newspaper under section 2051.044(a) of the Government Code can be determined objectively by calculating the publication's percentage of general-interest material; by determining the number of times the publication is published each week; by ascertaining whether the publication has been approved for Periodical mailing privileges; and by considering whether it has been published regularly and continuously for at least twelve months prior to the publication of the governmental entity's notice. *See id.* The remaining components used to determine whether a particular newspaper is of general circulation, the proportion of subscribers compared to the general population and the diversity of the audience, cannot be determined by applying an objective standard. "There is . . . no fixed number of readers or ratio of readers to the population necessary

for a newspaper to be considered one of general circulation." *Gannett Co. v. Delaware*, 1993 WL 19714, *4 (Del. Ch. 1993) (citing *Great S. Media, Inc.*, 284 S.W.2d at 467); *see also* Ark. Att'y Gen. Op. No. 90-134, 1990 WL 358833, *3 (and cases cited therein) (summarizing cases determining de minimis distribution). Whether a newspaper has more than a "trifling" or "minimal" number of paid subscribers so that the notice may serve to notify the public, as it is supposed to do, is a question of fact to be determined by the public official or body that is required to cause the notice to be published. *See* Tex. Att'y Gen. LO-97-036, at 3 n.3 (stating that determining whether particular consideration is "significant" or "de minimis" requires resolution of fact questions); Va. Att'y Gen. Op. No. 372 (1982), 1982 WL 175548, * 2 (same); BLACK'S LAW DICTIONARY 443 (7th ed. 1999) (defining "de minimis").

Whether a newspaper serves a diverse subscribership also requires a factual examination of whether the newspaper serves a "special or limited" audience, such as a "medical, literary, religious, scientific or legal journal," *see Great S. Media, Inc.*, 284 S.E.2d at 464 (quoting *Lynn v. Allen*, 44 N.E. 646, 647 (Ind. 1896)), or whether it "circulates among all classes and is not confined to a particular class or calling in the community." *Id.* (quoting *People v. South Dearborn Street Bldg. Corp.*, 24 N.E.2d 373, 374 (Ill. 1939)).

You next ask whether, in a county with a population of approximately 325,000, a weekly newspaper, as defined by section 2051.044 of the Government Code, with a subscriber base of approximately 200 is a newspaper of general circulation. "[I]t is not at all essential, to constitute a newspaper one of 'general circulation' . . . , that the newspaper be read by all the people of a county, township, or other community in which it circulates." Dale Agthe, Annotation, *What Constitutes Newspaper of "General Circulation" within Meaning of State Statutes Requiring Publication of Official Notices and the Like in Such Newspaper*, 24 A.L.R. 4th 822, 826 (1983). Whether a particular newspaper has more than a de minimis number of subscribers within a county must be determined by the county commissioners court, the body that is to arrange for the publication of county notices. *See* Va. Att'y Gen. Op. No. 372, 1982 WL 175548, at *2.

Fourth, you ask whether, "[i]n determining whether to award the contract for publication of legal notices to Newspaper 'A,'" the governmental entity may "consider the circulation numbers of Newspaper 'B,' even though Newspaper 'B' would not in and of itself qualify for the award of the contract." Newspaper A has paid subscribers, while its sister publication produced by the same press, Newspaper B, is distributed free of charge to homes and businesses within the county. *See* Request Letter, *supra*, at 1-2. A governmental entity may not include the circulation numbers of Newspaper B in determining whether Newspaper A is a newspaper of general circulation. The additional circulation may, however, be a factor in determining which bid is "the lowest and best." *See* TEX. LOC. GOV'T CODE ANN. § 262.027(a)(1) (Vernon 1999) (directing county commissioners court normally to award contract to "responsible bidder who submits the lowest and best bid"); *cf.* Tex. Att'y Gen. Op. No. JM-881 (1988) at 3 (explaining that county is not required to accept lowest bid, but "lowest and best" bid).

You ask fifth whether a commissioners court may set the minimum number of subscribers a newspaper must have in the bid specifications. A county may specify the characteristics of the goods or services it desires to purchase. *See* TEX. LOC. GOV'T CODE ANN. § 262.025(b)(1) (Vernon 1999); Tex. Att'y Gen. Op. No. JC-0124 (1999) at 2. But specifications must be definitely and objectively related "to matters of quality and competence or . . . adopted" in accordance with clear legislative authority. *See* Tex. Att'y Gen. Op. No. DM-113 (1992) at 7; *see also Texas Highway Comm'n v. Texas Ass'n of Steel Importers, Inc.*, 372 S.W.2d 525, 529 (Tex. 1963) (recognizing state agency's authority to specify quality of goods); Tex. Att'y Gen. Op. No. JC-0124 (1999) at 2 (discussing *Texas Ass'n of Steel Importers, Inc.*); Tex. Att'y Gen. Op. No. JM-1215 (1990) at 3 (same). While we believe an argument can be made that a specification regarding the minimum number of subscribers is related to the effectiveness of published public notices, whether a certain specification is in fact directly related to the quality of item to be purchased is a fact question. *See* Tex. Att'y Gen. Op. No. JM-1215 (1990) at 4.

In answer to your sixth question, we conclude that a county commissioners court may not "base its lowest and best bid criteria on the cost per unit or subscriber rather than the price per column inch." Request Letter, *supra*, at 2. Section 2051.045 of the Government Code sets the legal rate for publication of notice in a newspaper: "The legal rate for publication of a notice in a newspaper is the newspaper's lowest published rate for classified advertising." TEX. GOV'T CODE ANN. § 2051.045 (Vernon 2000). Consequently, a county must "base its lowest and best bid criteria" on the newspaper's lowest published rate for classified advertising. The statute does not specify that the rate must be articulated as a "price per column inch," but the statute does not permit the county commissioners court to require a newspaper to compete on a rate system other than that it normally uses.

Finally, you ask whether a county commissioners court may require in its bid specifications that the newspaper be one of general circulation, although "there are both special and general statutes, each requiring a different standard for publication." Request Letter, *supra*, at 2. You do not indicate what statutes you mean, nor have you provided any briefing. Consequently, we can offer only the most general advice.

A county may not publish notice in a newspaper of general circulation if such a newspaper would be inconsistent with the specific statute requiring the notice. *See* TEX. GOV'T CODE ANN. § 311.026 (Vernon 1998) (stating that specific statute normally controls over inconsistent general statute). Publishing notice in a newspaper of general circulation may not, in certain circumstances, satisfy specific statutory requirements regarding the location of publication. Section 202.043 of the Agriculture Code requires the governing board of a wind erosion conservation district, the boundaries of which must be coextensive with county boundaries, to publish notice of an assessment hearing "in a newspaper of general circulation" that is published in the county. *See* TEX. AGRIC. CODE ANN. § 202.043(c) (Vernon 1982); *see Christy v. Williams*, 292 S.W.2d 348, 352 (Tex. Civ. App.–Galveston 1956), *writ dism'd*, 298 S.W.2d 565 (Tex. 1957) (defining "published") (quoting Tex. Att'y Gen. Op. No. C-7286 (1946) at 3). Under such a statute, a wind erosion conservation

district could not publish its notice only in a newspaper of general circulation that is not published within the county.

## S U M M A R Y

A newspaper of general circulation is a newspaper that has more than a de minimis number of subscribers among a particular geographic region, that has a diverse subscribership, and that publishes some items of general interest to the community. *See also* TEX. GOV'T CODE ANN. § 2051.044(a) (Vernon 2000) (defining "newspaper"). Whether a particular newspaper is generally circulated is a question of fact. In determining whether a particular newspaper is a newspaper of general circulation for the purposes of publishing official notices, a governmental entity may not combine the subscriber numbers of that newspaper with the circulation numbers of a separate newspaper that is sent out free of charge to nonsubscribers.

So long as the specification relates to the quality of the goods and services a county desires to purchase, the commissioners court may specify, in a request for bids, the minimum number of subscribers a newspaper bidding on a contract to publish county notices must have. A county must "base its lowest and best bid criteria" on the newspaper's lowest published rate for classified advertising. *See id.* § 2051.045. A county may not publish notice in a newspaper of general circulation if such a newspaper would be inconsistent with the specific statute requiring the notice.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General - Opinion Committee